IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 11, 2005 Session

## FREDDIE D. ALLEY v. McLAIN'S INC. LUMBER AND CONSTRUCTION, ET AL.

**Appeal from the Chancery Court for Hawkins County**
**No. 14582    Thomas R. Frierson, II, Chancellor**

---

**No. E2004-2207-COA-R3-CV - FILED JUNE 10, 2005**

---

This case involves the wrongful cutting of timber on the plaintiff's property. Freddie D. Alley brought this action against McLain's Inc. Lumber and Construction, which cut and harvested timber from his property after Defendant Stephen Snodgrass falsely represented to McLain's that he owned the property and wanted to sell the timber. McLain's filed a counter-complaint and a third-party complaint against the co-owners of the property, alleging their comparative fault in preparing and executing a contract for sale of the real estate to Mr. Snodgrass. The case was tried to a jury, which found the co-owners partially at fault, Mr. Snodgrass partially at fault, and no fault on the part of McLain's. The issue presented is whether the trial court erred in failing to set aside the jury verdict and grant a new trial. We hold that based on stipulations prior to trial, there was no material evidence of negligence on the part of the co-owners. We also hold that the jury verdict is inconsistent. Therefore, we reverse the judgment in part, vacate in part and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Vacated in Part; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J. and WILLIAM H. INMAN, SR. J., joined.

C. Christopher Raines, Jr., Mt. Carmel, Tennessee, for Appellants Freddie D. Alley, Johnson-Johnson & Associates Real Estate and Auction Co., and Hugh Kyle Johnson.

Phillip L. Boyd, Rogersville, for Appellees McLain's Inc. Lumber & Construction and James McLain.

**OPINION**

## *I. Factual Background*

In November of 2000, Plaintiff Freddie D. Alley and Defendant Stephen Snodgrass entered into negotiations for the sale of 157 acres of real estate in Hawkins County, Tennessee. The property was co-owned by Mr. Alley and Third-Party Defendant Johnson-Johnson & Associates Real Estate and Auction Company, Inc., each with an undivided one-half interest. Mr. Alley and Mr. Snodgrass settled on a $500,000 purchase price. On November 28, 2000, Mr. Alley and Mr. Snodgrass signed a document styled "Contract for sale of real estate" that had been drafted by Third-Party Defendant Hugh Kyle Johnson.[1]

The document provides as follows in relevant part, with handwritten parts in italics:

> 1. *$50,000* is hereby deposited by buyer with Johnson-Johnson & Associates Real Estate & Auction Company as earnest money and will apply to purchase price of $*500,000.00.*
> 2. Balance of $450,000.00 shall be paid as follows: *50,000.00 on or before December 30, 2001. $100,000 each year thereafter until paid in full with interest on balance at 7% per annum.*
> $$* \qquad * \qquad *$$
> 5. Sale shall be closed *on or before January 2, 2001.*
> $$* \qquad * \qquad *$$
> 9. Possession on or before *with delivery of deed.* [sic]

After the parties signed the document, Mr. Snodgrass informed Mr. Johnson and Mr. Alley that he did not have the $50,000 down payment. Both Mr. Johnson and Mr. Alley testified that Mr. Johnson then wrote at the top of the document: "down payment of 50,000 shown below will not be paid until Jan. 2, 2001." This handwritten addendum was neither initialed nor dated by either of the signatories.

Shortly thereafter, Mr. Snodgrass approached Defendant McLain's Inc. Lumber and Construction ("McLain's") with an offer to sell the standing timber on the property. On December 12, 2000, McLain's and Mr. Snodgrass executed a contract for sale of the timber which provided as follows in relevant part:

---

[1] It appears that the precise relationship between Hugh Kyle Johnson and Johnson-Johnson & Associates Real Estate and Auction Co., Inc. is not revealed by the record. Mr. Johnson is simply referred to as an agent of Johnson-Johnson & Associates, and this characterization is undisputed.

I, Steve Snodgrass, being the owner of timber located off Hwy 11W & New Canton Rd. Church Hill area of Hawkins Co., Tenn., have agreed to sell McLain Lumber Co., Inc. timber on this land for the amount of $14,500.00. . .All timber to be cut 16" and up.

It is undisputed that McLain's did nothing to verify Mr. Snodgrass' ownership of the property, relying solely upon his word that he owned it. James McLain, president of McLain's, signed and delivered a check to Mr. Snodgrass in amount of $14,500. Mr. Snodgrass immediately cashed the check.

Mr. Snodgrass did not appear for the anticipated closing of the real estate sale on January 2, 2001. McLain's began cutting timber on the property on or around January 15, 2001. Upon discovering the timber cutting operation, Mr. Johnson contacted McLain's and requested they stop cutting trees, which they immediately did.

On June 20, 2001, Mr. Alley filed this action against McLain's and Mr. Snodgrass. Mr. Alley sought compensation for the injuries to his property due to the allegedly wrongful and unauthorized cutting of timber, and further alleged the applicability of Tenn.Code Ann. § 43-28-312, which provides for civil liability for cutting timber from another's property. McLain's answered and filed a cross-complaint against Mr. Snodgrass. McLain's subsequently amended its pleadings to include a counter-complaint against Mr. Alley and a third-party complaint against Johnson-Johnson & Associates Real Estate and Auction Company, Inc. and Mr. Johnson individually. McLain's alleged comparative fault on the part of Mr. Alley, Mr. Johnson, and Johnson-Johnson, in negligently drafting the contract for sale of the real estate.

The case was tried before a jury on March 18, 19 and 22, 2004. The jury returned a special verdict form in which it found Mr. Alley 5% at fault; Mr. Johnson 5% at fault; Johnson-Johnson & Associates 10% at fault; Mr. Snodgrass 80% at fault; and McLain's 0% at fault. The jury found that Mr. Alley was entitled to double the amount of the market value of the timber cut, pursuant to Tenn.Code Ann. § 43-28-312. The trial court reduced this amount by 20%, the amount of comparative fault on the landowners' part, resulting in a verdict in the amount of $34,064.02 in favor of Mr. Alley. The jury found Mr. Snodgrass liable to McLain's in the amount of $25,000.

The trial court entered a default judgment against Mr. Snodgrass, who did not enter an appearance in this action. That judgment has not been appealed and is final. Mr. Alley, Mr. Johnson and Johnson-Johnson & Associates moved for a new trial, which the trial court denied. This appeal followed.

## II. Issue Presented and Standard of Review

The Appellants raise the issue, which we restate, of whether the trial court erred in failing to set aside the verdict and grant a new trial.

As the Tennessee Supreme Court has recently stated, "[a] trial court's decision regarding whether to grant or deny a motion for a new trial is discretionary in nature, and we accord such rulings great deference. We will only disturb such a decision if it amounts to an abuse of discretion." *Ali v. Fisher,* 145 S.W.3d 557, 564 (Tenn. 2004). Further,

> [w]hen jury trials are involved, our task is to determine whether there
>
> is any material evidence to support the jury's verdict. *See Harper v. Watkins,* 670 S.W.2d 611, 631 (Tenn.Ct.App.1983); *Lassetter v. Henson,* 588 S.W.2d 315, 317 (Tenn.Ct.App.1979); *see also* Tenn.R.App.P. 13(d). Moreover, "we must take the strongest legitimate view of all the evidence to uphold the verdict, assume the truth of all that tends to support it and discard all to the contrary. We are bound to allow all reasonable inferences to sustain the verdict, and, if there is any material evidence to support the verdict, we must affirm." *See Harper,* 670 S.W.2d at 631. We do not reweigh the evidence. *See Electric Power Bd. v. St. Joseph Valley Structural Steel Corp.,* 691 S.W.2d 522, 526 (Tenn.1985).

*Dickey v. McCord,* 63 S.W.3d 714, 719 (Tenn. Ct. App. 2001).

### III. Comparative Fault

We first address McLain's counter- and third-party comparative fault claims against Mr. Alley, Mr. Johnson, and Johnson-Johnson & Associates. McLain's alleged as follows in relevant part:

> [Mr.] Alley along with. . .Johnson and Johnson Real Estate and Auction Company and Hugh Kyle Johnson, as agent, were guilty of executing a contract for sale for the property in dispute which shows on its face that the defendant Snodgrass had paid $50,000 as a down payment for the purchase of the property in dispute. Defendants/counter-plaintiffs McLain further aver that by signing same when, in fact, there was no down payment was misleading to any innocent third party and was negligence on the part of the counter-defendant Alley and third-party Johnson and Johnson Real Estate and Auction Company.

Significantly, however, all parties made the stipulation, as held by the trial court, that "the McLains never saw the contract between Mr. Alley and Mr. Snodgrass; and therefore, there was never any reliance on that contract." No claim for negligence can succeed if any one of the following elements is absent: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation

-4-

in fact; and (5) proximate, or legal cause. *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993).

Thus, even assuming that the drafting and/or execution of the document fell below the applicable standard of care, as we must under our standard of review, the counter- and third-party claims of negligence must fail due to a complete absence of both factual and proximate causation. Because McLain's was entirely unaware of the existence of the document prior to the filing of this action, reliance upon the document, whether or not negligently drafted, could not have been a cause of its injury. It is undisputed that McLain's did not have, nor did it seek, any evidence that Mr. Snodgrass owned the property at issue, other than the word of Mr. Snodgrass. We hold there is no material evidence supporting the jury's verdict finding Mr. Alley 5% at fault, Mr. Johnson 5% at fault, and Johnson-Johnson & Associates 10% at fault.

### *IV. Inconsistent Verdict*

The jury in this case returned a verdict that Mr. Alley was entitled to recover double the value of his timber. The special verdict form indicates the following finding by the jury:

> 3. Is Mr. Alley entitled to recover either the fair market value, the double value or the triple value of the timber?
>
> Fair market value___ Double value__X__ Triple value___

This verdict requires a finding of negligence on the part of the timber cutter based on the statute providing for civil liability for cutting timber from the property of another. Tenn.Code Ann. § 43-28-312 provides as follows:

> (a))(1) *Civil liability for the negligent cutting of timber from the property of another is in an amount double that of the current market value of the timber.*
>
> (2) If the timber is negligently cut from the property of another because the landowner for whom the timber is being cut has marked or designated the boundary of such landowner's property incorrectly, then such landowner is jointly liable for such double damages.
>
> (b) Civil liability for knowingly and intentionally cutting timber from the property of another is in an amount treble that of the current market value of the timber.
>
> (c) Nothing in this section precludes an owner of property on which timber has been cut by another from recovering damages for loss of

value other than commercial timber value, if any, of the timber negligently or intentionally cut.

[Emphasis added].

We are faced with the result that the jury found no negligence on the part of the timber cutter, but awarded the owner double the value of the timber based on a statute that requires a finding of negligence on the part of the timber cutter. Therefore, we have an inconsistent verdict.

Our Supreme Court has stated as follows regarding inconsistent verdicts:

> Tennessee law is well-established that litigants are entitled to have their rights settled by a consistent and intelligible verdict and that verdicts that are inconsistent and irreconcilable cannot stand. *See Milliken v. Smith,* 218 Tenn. 665, 668, 405 S.W.2d 475, 476 (1966)*; Alabama Highway Express, Inc. v. Luster,* 51 Tenn.App. 691, 696, 371 S.W.2d 182, 183 (1963); *Penley v. Glover,* 30 Tenn.App. 289, 292, 205 S.W.2d 757, 759 (1947). Where a judgment is based upon inconsistent findings by a jury it is the duty of the appellate court to reverse and remand the case for a new trial. *See McInturff,* 565 S.W.2d at 482*; Berry v. Foster,* 199 Tenn. 352, 356, 287 S.W.2d 16, 18 (1955); *Penley,* 30 Tenn.App. at 292, 205 S.W.2d at 759.
>
> A new trial is also warranted when verdict forms are composed in such a faulty fashion that they do not address each of the plaintiffs' theories of recovery and do not allow the jury to adequately respond to each claim. Well-settled law requires courts to construe the terms of a verdict in a manner that upholds the jury's findings, if it is able to do so. *See Briscoe v. Allison,* 200 Tenn. 115, 125-26, 290 S.W.2d 864, 868 (1956). Even if a verdict is defective in form, it is to be enforced if it sufficiently defines an issue in such a way as to enable the court to intelligently articulate a judgment. *See Arcata Graphics Co. v. Heidelberg Harris, Inc.,* 874 S.W.2d 15, 22, 27 (Tenn.App.1993).

*Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 911 (Tenn. 1999).

Under the statute, the jury's finding that Mr. Alley is entitled to double the market value of the timber cut requires a finding that there was a "negligent cutting of timber." Tenn. Code Ann. § 43-28-312. But the jury also found McLain's, the cutter of the timber, zero percent at fault. We further note that Mr. Snodgrass was not alleged to be guilty of negligence by any party, but rather

-6-

of intentional fraud and misrepresentation. Under these circumstances, we are constrained to hold that the jury verdict was inconsistent, vacate the judgment, and remand for a new trial.

### *V. Doctrine of Equitable Conversion*

One further issue remains to be addressed. The trial court ruled that if the document styled "Contract for sale of real estate" and signed by Mr. Alley and Mr. Snodgrass was an enforceable executory contract, then the doctrine of equitable conversion applied to shield McLain's from liability to Mr. Alley. Appellants argue that the application of this doctrine was error, and that under the particular facts of this case, it should be held to be inapplicable. We agree.

This court stated the following as regards the doctrine of equitable conversion in the case of *Campbell v. Miller,* 562 S.W.2d 827 (Tenn. Ct. App. 1977):

> the general rule is stated that a contract for the sale of land operates as an equitable conversion and the vendee's interest under the contract becomes realty and the vendor's interest becomes personalty, and in equity the vendee is regarded as the owner, subject to liability for the unpaid price, and the vendor is regarded as holding only the legal title in trust for the vendee from the time a valid contract for the purchase of land is entered into. 77 Am.Jur.2d 478-479, "Vendor and Purchaser," Sec. 317.

*Campbell,* 562 S.W.2d at 831-32.

In the case of *Rackley v. DeKalb Co. Fire Dep't.,* No. M2000-00885-COA-R3-CV, 2000 WL 1586464, 2000 Tenn. App. LEXIS 705 (Tenn. Ct. App. M.S., filed Oct. 25, 2000), the court applied the equitable conversion doctrine where the buyers (the Rowlands) had executed a contract to buy real estate, made a $1,000 down payment and taken possession of the property and "treat[ed] the property as their own." *Id.,* 2000 WL 1586464 at *1. After the Rowlands requested the defendant DeKalb County Fire Department to burn down a structure on the property, they refused to follow through in purchasing the property. The sellers sued the fire department for trespass. The *Rackley* court, applying the equitable conversion doctrine, held as follows:

> If the Fire Department had the permission of the equitable owner to enter on the land, such entry does not amount to a trespass, and the County cannot be held liable for failing to discover that the equitable title and the legal title to the land were held by different parties.

*Rackley,* 2000 WL 1586464 at *2.

The *Rackley* decision is distinguishable from the present case in at least two regards. First, the buyers in *Rackley* actually made a down payment of earnest money on the property, whereas in this case it is undisputed that Mr. Snodgrass paid nothing in consideration supporting the contract. More importantly, there is no suggestion that it was the intention of the parties in the present case that Mr. Snodgrass have any right to take possession of the property prior to closing. The *Rackley* court emphasized the fact that the Rowlands had the right to possession in its rationale for applying the doctrine of equitable conversion:

> There was no provision in the contract of sale that would have had the effect of postponing Mr. Rowland's right to enter or possess the property until after closing. He was thus in rightful possession of the property at the time he gave Mr. Green permission to burn the house. The fact of Mr. Rowland's possession is admitted in the plaintiffs' sworn complaint, and can also be inferred from the plaintiffs' letter of April 24, threatening to re-take possession if Mr. Rowland did not fulfill his side of the bargain.

*Rackley,* 2000 WL 1586464 at *2; *see also Parker v. Tennessee Farmers Mut. Ins. Co.,* 1988 WL 138923 at *4, 1988 Tenn. App. LEXIS 865 (Tenn. App .E.S., filed Dec. 30, 1988)(stating "the purchasers, upon entering into the sale agreement *and taking possession of the property*, became the equitable owners of it.") [Emphasis added].

In the present case, the document at issue provides for "[p]ossession on or before with delivery of deed" [sic]. Although the "on or before" arguably makes this provision somewhat ambiguous, when the entirety of the circumstances is considered, it is clear that the would-be sellers in this case did not intend for Mr. Snodgrass to have the right of possession prior to closing and delivery of the deed. This is an important consideration is determining whether equitable conversion should be applied. *Wayne v. Fouts,* 65 S.W. 471, 472 (Tenn. 1901)("However made, to be effective as a conversion, the direction that the form of the property be actually changed must be imperative, in the sense of being positive and unmistakable.")

There is yet another reason in our opinion to find the equitable conversion doctrine inapplicable, found in the following well-stated principle:

> The doctrine of equitable conversion is the outgrowth of the old maxim that equity regards that as done which ought to have been done. *It is not a fixed rule of law but proceeds upon equitable principles, so that its application will be somewhat affected by the connection in which it is invoked. It is entirely a creation of and depends wholly upon rules of equity.* It is most frequently applied in solving questions concerning the validity and execution of trusts in determining the legal character of the interests of beneficiaries, the devolution of property as between real and personal representatives and for other similar purposes. But being altogether a doctrine of

equity designed to promote justice by carrying out the purpose of a testator, vendor or other person, *it should be admitted for the accomplishment of equitable results only and in its application constant watchfulness is required to guard against a tendency to make of it a formal rule de jure, regardless of its real purpose and necessity*. Moreover, it should never be overlooked that there is no real conversion, for the purpose remains all the time in fact realty or personalty just as it was; but for the purpose of the will or other instrument so far as may be necessary and only so far, it is treated in contemplation of law as if it had been converted. [Emphasis added].

*Fowler v. Plunk,* 7 Tenn.App. 29, 34, 1928 WL 1991 at *4 (Tenn. Ct. App. 1928).

Keeping the above in mind, we do not think it can be said that equity should operate as a complete bar to the possibility that McLain's be held responsible for cutting the timber on Plaintiffs' property. Whether or not the document is a valid and enforceable executory contract, it remains undisputed that McLain's was not aware of its existence and in no way relied on any alleged equitable interest created thereby.

We do not express any opinion on the question of whether McLain's should be held liable for cutting the timber; that is an issue for the jury to decide upon remand. We merely hold that the equitable conversion doctrine should not operate to preclude recovery under the particular facts of this case, should the trier of fact find McLain's liable.

For the aforementioned reasons, the judgment of the trial court holding Mr. Alley 5% at fault, Mr. Johnson 5% at fault, and Johnson-Johnson & Associates Real Estate and Auction Company, Inc. 10% at fault is reversed, and the counter-complaint and third-party complaint is dismissed. Pursuant to our holding the jury verdict inconsistent, the trial court's entry of judgment therefrom is vacated, and the case remanded for a new trial, consistent with this opinion. Costs on appeal are assessed against the Appellee, McLain's Inc. Lumber and Construction.

_____

SHARON G. LEE, JUDGE