IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs JUNE 16, 2009

# REMOTE WOODYARDS, LLC. v. THE ESTATE OF ROMIE NEISLER, ET AL.

### Direct Appeal from the Chancery Court for Henderson County
No. 18500     James F. Butler,  Chancellor

---

### No.  W2008-02591-COA-R3-CV - Filed August 25, 2009

---

This case arises from a dispute over a timber contract.  Appellees, through their attorney-in-fact, executed a timber deed in favor of John Jones, which deed was recorded.  Mr. Jones then assigned the deed to the Appellant herein, and this assignment was not recorded.  When the Appellees discovered that Mr. Jones' checks were insufficient, they re-sold the timber to the third-party defendant. [1] The third party paid value for the timber, and proceeded to cut and remove it.  Appellant then filed suit against the Appellees and the third party defendant.  The trial court found that Appellant was a bona fide purchaser for value, but declined to award double or treble damages pursuant to Tenn. Code Ann. § 43-28-312.  The trial court also relieved the Appellees' attorney-in-fact from liability, and determined that the third party defendant was also a bona fide purchaser and, therefore, not liable.  Appellant appeals.  We affirm.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Stephen L. Hughes, Milan, Tennessee, for the Appellant, Remote Woodyards, LLC.

W. Stanworth Harris, Jackson, Tennessee, for the Appellee, Estate of Romie Neisler.

Ricky L. Wood, Parsons, Tennessee, for the Appellee, James H. Lindsey.

---

[1] Mr. Jones was not made a party to this lawsuit.  No issue was raised concerning this fact.

# OPINION

On or about June 2, 2003, Romie Neisler and his wife Francis Neisler executed a Timber Deed, conveying to John Jones "all merchantable pine timber except the excluded pine around the homestead grounds and all hardwood timber market with scarlet paint" on certain land located in Henderson County, Tennessee. This deed was recorded on June 3, 2003 in Deed Book 212, at Page 350 in the Register's Office of Henderson County. The Deed recites consideration of "Ten and 00/100 Dollars and other good and valuable consideration...the receipt thereof [being] acknowledged." The Deed also contains standard warranties, to wit:

> TO HAVE AND TO HOLD THE SAME to the said Grantee, his heirs and assigns forever; and Grantors and assigns, for Grantors, their heirs and assigns covenant with the said Grantee, his heirs and assigns, that Grantors are lawfully seized in fee simple of the property herein conveyed, that it is free from all encumbrances, and that Grantors have a good right to sell and convey the same, and that Grantors, their heirs and assigns, shall warrant and defend the same to Grantee, his heirs and assigns, forever, against the lawful claims of all persons.

Trial exhibit 5 is a check drawn on John Jones and payable to Romie Neisler in the amount of $15,000.00 for "timber." According to the record, Mr. Jones also gave Mr. Neisler a second check in the amount of $5,000, for a total purchase price of $20,000.

On or about June 3, 2003, Mr. Jones assigned the Timber Deed to the Appellant Remote Woodyards, L.L.C. Remote Woodyards paid Mr. Jones a total of $28,000.00 for the assignment. However, the assignment to Remote Woodyards was not recorded. Shortly thereafter, the two checks that Mr. Jones had given the Neislers were returned for insufficient funds. Despite the fact that the Neislers contacted Mr. Jones regarding the dishonored checks, Mr. Jones never made good on the payments. The Neislers took no further action to collect the monies owed, or to revoke the recorded Timber Deed.

Romie Neisler subsequently died, and the Neislers' son, Joe Neisler was appointed personal representative of his father's estate. Mrs. Francis Neisler suffers from Alzheimer's, and Joe Neisler is her attorney-in-fact. On or about January 9, 2004, Joe Neisler, on behalf of his mother, executed a Timber Contract in favor of James H. Lindsey (together with the Estate of Romie Neisler, Francis Neisler, and Joe Neisler, "Appellees") for the same timber rights that were originally conveyed to John Jones. Mr. Lindsey subsequently cut and removed the timber.

On June 29, 2004, Remote Woodyards filed suit against the Appellees herein, seeking judgment for the loss of the value of the subject timber, and for treble damages in accordance with Tenn. Code Ann. §43-28-312, or alternatively for double the amount of the fair market value of the timber. In response, the Neislers moved for summary judgment on August 23, 2004, alleging that

they received no consideration for the Timber Deed due to the fact that Mr. Jones' checks were returned insufficient. On November 1, 2004, Remote Woodyards moved the court for partial summary judgment on the issue of whether Remote Woodyards is the "lawful holder of all merchantable pine timber except the excluded pine...by virtue of being a bona fide purchaser of said timber for value."

On November 4, 2004, Mr. Lindsey filed an answer to Remote Woodyard's complaint, denying any liability. Mr. Lindsey also filed a cross-complaint against the Neislers, in which he avers that, should the court find that he wrongfully cut the timber, he should have judgment against the Neislers for any damages incurred on theories of breach of contract, indemnification and/or contribution. In their answer to the cross-complaint filed by Mr. Lindsey, the Neislers assert that Mr. Lindsey fails to state a claim upon which relief can be granted.

On February 7, 2008, following a hearing on the cross-motions for summary judgment, the trial court issued its Order, granting Remote Woodyard's motion for partial summary judgment, and denying the Neislers' motion for summary judgment. The trial court specifically held:

> 5. The timber deed [from the Neislers to Mr. Jones] acknowledged receipt of the consideration by the Neisler Defendants. There is no mention of the [fact that] consideration was paid by check or that the transfer was contingent on the check being a good check.
>
> 6. The timber deed further warranted title to the grantee (Jones), his heirs and assigns forever against the lawful claims of all persons.
>
> 7. [Remote Woodyards] was a bonafide purchaser for value, having paid Jones for the assignment of his rights in the deed. As a result, the Plaintiff takes free of the Defendants' claims and is not subject to the defenses Defendants may have against Jones.

The remaining issues, including the value of the timber, the allocation of claims against the various Defendants, the cross-claim of Mr. Lindsey against the Neislers, and the amount of damages were reserved for trial. Prior to trial, on August 15, 2008, the Neislers' son Joe Neisler moved the court to be dismissed from the lawsuit. In support of his motion, Joe Neisler asserts that "he has no ownership interest in either the timber or the real estate which is the subject of th[e] lawsuit; and...[that he] was acting as an agent for [his parents] and is therefore not personally liable on any contract entered into on behalf of [his parents]." The case proceeded to trial on September 26, 2008. On October 23, 2008, the court entered its Order, which reads, in pertinent part, as follows:

> 1. The Court awards [Remote Woodyards] a Judgment against the estate of Romie Neisler and Francis Neisler for $28,000, plus prejudgment interest at the rate of 7% per annum, from the date of the Timber Deed, June 3, 2003, until September 26, 2008, which interest

amount totals $10,417.55 for a total judgment of $38,417.55 as of September 26, 2008. Thereafter, interest shall accrue at the statutory rate of 10% per annum until paid.

In this Order, the trial court also grants Joe Neisler's motion, dismissing him from the lawsuit. Concerning Mr. Lindsey, the court found that he was a bona fide purchaser for value, and that, as such, he has no liability.

Remote Woodyards appeals and raises three issues for review as stated in its brief:

I. Whether the Court erred in finding that Tenn. Code Ann. § 43-28-312 is inapplicable to the facts of this case?

II. Whether the Court erred in failing to grant a judgment against Defendant, Joe Neisler, individually?

III. Whether the Court erred in failing to grant a judgment against Defendant, James H. Lindsey, individually and as to all Defendants, jointly and severally?

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness as to the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. ***See*** Tenn. R. App. P. 13(d).

### Applicability of Tenn. Code Ann. § 43-28-312

Tenn. Code Ann. § 43-28-312 provides:

**Liability for cutting timber from property of another**.

(a)(1) Civil liability for the negligent cutting of timber from the property of another is in an amount double that of the current market value of the timber.
(2) If the timber is negligently cut from the property of another because the landowner for whom the timber is being cut has marked or designated the boundary of the landowner's property incorrectly, then the landowner is jointly liable for the double damages.
(b) Civil liability for knowingly and intentionally cutting timber from the property of another is in an amount treble that of the current market value of the timber.
(c) Nothing in this section precludes an owner of property on which timber has been cut by another from recovering damages for loss of

value other than commercial timber value, if any, of the timber negligently or intentionally cut.

(d) "Current market value," as used in this section, applies to the property in question that is standing timber; therefore, the current market value is that of the timber before being cut.

On appeal, Remote Woodyards avers that the trial court erred in ruling that this statute is inapplicable to the case at bar. Specifically, the trial court found that, because Remote Woodyards did not own the land from which the timber was removed, it was not entitled to recover double or treble damages pursuant to Tenn. Code Ann. § 43-28-312. After review, we agree.

Tenn. Code Ann. § 43-28-312 deals with liability for cutting timber "from the property of another." The degree of damages (double or treble) depends upon the intent of the tortfeasor, i.e., whether the cutting was intentional or negligent. On appeal, Remote Woodyards contends that the trial court misinterpreted the statute and specifically erred in ruling that the statute requires the Plaintiff to "hold a fee simple interest in the subject real estate in order for the Timber Trespass statute... to apply." Remote Woodyards contends that, because the statute is designed to prevent the cutting of timber owned by someone else, it is the ownership of the timber itself (and not the land upon which the timber lies) that decides the applicability of the statute. In short, Remote Woodyards takes the position that it is the owner of the timber at issue and that the timber is the "property," to which Tenn. Code Ann. §43-28-312(a)(1) refers. In support of its argument, Remote Woodyards cites the case of **Childers v. Coleman**, 118 S.W. 1018 (Tenn. 1909) for the proposition that "a sale of standing timber is a sale of an interest in land, and hence a deed therefore is controlled by the Rule that governs deeds for realty." Relying upon **New River Lumber Co. v. Blue Ridge Lumber Co.**, 240 S.W. 763 (Tenn. 1922), Remote Woodyards further avers that timber retains its character as realty until it is harvested; at that time, it become personalty. While we do not disagree with this distinction, we find that it is not dispositive on the issue before us. Rather, the issue requires us to interpret the legislative intent in including the term "property" in Tenn. Code Ann. § 43-28-312(a)(1).

Our Supreme Court has stated that in interpreting statutes, courts are to "give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." **Owens v. State**, 908 S.W.2d 923, 926 (Tenn.1995). The courts should determine intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." **State v. Flemming**, 19 S.W.3d 195, 197 (Tenn. 2000). Further, the rules of statutory construction direct courts not to "apply a particular interpretation to a statute if that interpretation would yield an absurd result." **State v. Sims**, 45 S.W.3d 1, 11 (Tenn. 2001). Our case law addressing issues arising from Tenn. Code Ann. §43-28-312 is fairly sparse. Moreover, these cases generally deal with the question of whether the acts of the tortfeasor were intentional or negligent, and not with the current issue of whether the term "property" means the land upon which the timber grows, or the timber itself. **See, e.g., Alley v. McLain's Inc. Lumber and Const.**, 182 S.W.3d 312 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Oct. 31, 2005); **Mix v. Miller**, 27 S.W.3d 508 (Tenn. Ct. App. 1999), *perm. app.*

*denied* (Tenn. March 13, 2000). However, we do find guidance in the statute's annotations. Reviewing of the annotations, it is clear that the remedies contemplated in Tenn. Code Ann. § 43-28-312 sound in trespass, and specifically trespass onto the land of another resulting in the cutting of timber therefrom. *See* 87 C.J.S. TRESPASS §162 (2009), which states:

> A statute [such as Tenn. Code Ann. § 43-28-312 ] may give a special remedy for cutting, digging up, or removing trees or other things growing **on land** by allowing the recovery of double, or treble, damages or a penalty.

*Id*. (emphasis added) (footnotes omitted). This annotation, coupled with the plain and unambiguous language of statute and the relevant case law, leads us to conclude that the legislative intent was to protect against intentional or negligent cutting of timber from the real property of another. Consequently, we conclude that the use of the word "property" in Tenn. Code Ann. § 43-28-312(a)(1) means land.

It is undisputed that the Neislers were always the owners of the land upon which the subject timber grew. Based upon the foregoing analysis the trial court was correct in its ruling that Remote Woodyards cannot recover under Tenn. Code Ann. § 43-28-312 because Remote Woodyards was not the owner of the real property. However, even if we assume, *arguendo* (which we do not), that the word "property" in Tenn. Code Ann. § 43-28-312(a)(1) means the timber (as opposed to the land), based upon our review of the June 2, 2003 Timber Deed between the Neislers and John Jones, our conclusion is the same. This Deed contains the following, relevant, language:

> Grantee [Jones] shall have twenty-four (24) months to cut and remove said timber, and all timber remaining on said lands at the expiration of said time shall then revert to and vest in Grantors [Neislers], their heirs and assigns.

Based upon this language, we conclude that Mr. Jones did not own the timber outright; rather, he owned a two-year right to cut the timber. This is the interest that Remote Woodyards purchased from Mr. Jones. Consequently, under either interpretation of the statute, we find that it is not applicable to this case.

### Liability of Joe Neisler

It is undisputed in this record that Joe Neisler, the son of Romie and Francis Neisler, acted as his parents attorney-in-fact in executing the deeds in this case. It is not alleged that Joe Neisler failed to inform either Mr. Jones or Mr. Lindsey that he was not the principal to the documents executed on behalf of his parents. Moreover, Joe Neisler received no benefit from the sale of the timber, nor is there any evidence that Joe Neisler acted knowingly, intentionally, or negligently, or with an intent to harm Remote Woodyards. In fact, the record indicates that Joe Neisler did not have knowledge of Mr. Jones' assignment of the timber deed to Remote Woodyards. Furthermore,

because this assignment was not recorded, even if Joe Neisler had searched the public records, he would not have discovered the assignment.

It is a well-settled principle of law that, in order for an agent to avoid personal liability on a contract negotiated on behalf of the agent's principal, the agent must disclose not only the fact of the agency, but also the identity of the principal. *See, e.g., Siler v. Perkins*, 126 Tenn. 380, 149 S.W. 1060 (1912). There is no allegation that Joe Neisler did not fully disclose his role in the transactions. 3 Am Jur 2d, Agency, §298 addresses tort liability on the part of an agent, and provides:

> Generally, agency law does not insulate an agent from liability for his or her torts, because an agent's tort liability is not based upon the contractual relationship between the principal and agent, but upon the common-law obligation that every person must so act or use that which he or she controls as not to injure another. Thus, whether acting on his or her own behalf or for another, an agent who violates a duty owed to a third person is answerable to the injured party for the consequences. An agent is not relieved from liability merely because he or she acted at the request, command, or direction of the principal. In this regard, the rule under the Restatement Second of Agency is that an agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.
>
> Thus, an agent may be held liable to a third person for his or her own negligence, or his or her own positive wrongs, such as a trespass, an assault, the conversion of property, fraud or misrepresentation, abuse of process, or other tortious conduct.
>
> However where a defendant acts as an agent for a known principal, the defendant-agent incurs no liability for a principal's breach of duty.

*Id*. (footnotes omitted).

Remote Woodyards contends that Joe Neisler, "as one of the 'Grantors'," warranted to defend title to the timber to Remote Woodyards as an assignee of Jones." Remote Woodyards further asserts that Joe Neisler was, in fact, a party to the subsequent Timber Contract, in which the subject timber was conveyed to Mr. Lindsey. We cannot agree. It is clear from the record, and specifically the Timber Deed, that Joe Neisler is not an owner of the subject property. The deed from the Neislers to Mr. Jones clearly states that the subject property is "the same property conveyed to Romie W. Neisler and wife, Francis W. Neisler." Moreover, the Certificate of Title Examination performed for Remote Woodyards states that the property is owned by Romie and Francis Neisler.

From the record as a whole, we conclude that it was clear that the property was owned only by Romie and Francis Neisler, that Joe Neisler acted only as his parents' agent, and that Joe Neisler did not engage in any tortious conduct so as to give rise to liability on his part. We, therefore, conclude that the trial court correctly dismissed Joe Neisler from this lawsuit.

## Liability of Mr. Lindsey

The recording statutes, Tenn. Code Ann. §§ 66-24-101 *et seq*., clearly indicate that, if an instrument is required to be recorded and is not, then the instrument creating the obligation is enforceable against the parties thereto, but is not enforceable against a bona fide purchaser for value without notice. **See also Brown v. Smith**, 225 S.W.2d 91 (Tenn. Ct. App. 1949). Specifically, Tenn. Code Ann. § 66-24-103 provides:

> Any instruments not so registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

This court has recently defined "bona fide purchaser" as "one who buys something for value without notice of another's claim to the item or of any defects in the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims." **Rogers v. The First Nat'l Bank**, No. M2004-2414-COA-R3-CV, 2006 WL 344759 at *12 (Tenn. Ct.App., Feb. 14, 2006); *accord* **Henderson v. Lawrence**, 369 S.W.2d 553, 556 (Tenn.1963)(stating "A bona fide purchaser is one who buys for a valuable consideration without knowledge or notice of facts material to the title").

It is undisputed that the assignment from John Jones to Remote Woodyards was not recorded. In fact, there is no indication that Mr. Lindsey had any knowledge of the existence of this assignment. Mr. Lindsey entered into his contact with the Neislers on January 9, 2004, and within a month began cutting and removing timber. The record indicates that it took Mr. Lindsey three or four months to complete the timber harvest. In short, Mr. Lindsey's actions in removing the timber were open and obvious, and were not done by way of subterfuge. Moreover, it is undisputed that Mr. Lindsey paid the Neislers $20,000 for the timber. Based upon these undisputed facts, we conclude that Mr. Lindsey was a bona fide purchaser for value and, as such, is not liable to Remote Woodyards in this case.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed to the Appellant, Remote Woodyards, L.L.C., and its surety.

_____
J. STEVEN STAFFORD, J.