IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 27, 2011 Session

## IN RE: THE MATTER OF THE CONSERVATORSHIP OF MITTIE T. ALEXANDER v. JB PARTNERS, A Tennessee General Partnership

**Direct Appeal from the Probate Court for Davidson County**
**No. 09P-1052     David Randall Kennedy, Judge**

---

**No. M2011-00776-COA-R3-CV - Filed November 1, 2011**

---

Plaintiff Conservator filed an action seeking rescission of a warranty deed executed by her Ward prior to the establishment of the conservatorship. The deed conveyed real property in Nashville to Defendant without consideration, but retained a life-estate. Plaintiff alleged incapacity to contract as grounds for recision. Prior to the filing of Plaintiff's action, Defendant and Appellee Intervener executed a contract for sale of the property, subject to the life-estate. The trial court determined that the Intervener held superior title to the real property under the doctrine of equitable conversion. The trial court entered final judgment in favor of Intervener pursuant to Tennessee Rule of Civil Procedure 54.02. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed in part, Reversed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

G. Kline Preston, IV, Nashville, Tennessee, for the appellant, Teresa Ann Alexander, Conservator, on behalf of Mittie T. Alexander.

Susan Bratton Evans, and Raymond T. Throckmorton, III, Nashville, Tennessee, for the appellee, JB Partners.

## OPINION

This appeal arises from an action to rescind the conveyance of an interest in real property. On July 8, 2009, Plaintiff Teresa Alexander (Ms. Alexander) filed a petition for

conservatorship of Mittie Taylor Alexander ("Miss Mittie")[1], her mother, in the Circuit Court for Davidson County. In her petition, Ms. Alexander alleged Miss Mittie suffered from dementia and that she had made financial decisions over the preceding two years that were ill-advised and that had affected her financial well-being. Ms. Alexander alleged that those decisions resulted from mental incapacity. She specifically asserted that Miss Mittie had transferred her interest in real property in Nashville without consideration, and that the transaction was unfair and "could not have been intentional." She prayed to be appointed conservator to handle Miss Mittie's affairs. Following a hearing in August 2009, the trial court granted Ms. Alexander's petition by order entered September 11, 2009.

On September 22, 2009, Ms. Alexander filed the present action on behalf of Miss Mittie in the Circuit Court for Davidson County against Starlene Anderson (Ms. Anderson). In her complaint, Ms. Alexander asserted that Miss Mittie had transferred her interest in real property in Nashville to Ms. Anderson, Miss Mittie's niece, without consideration in April 2008.[2] Ms. Alexander asserted that Miss Mittie was legally blind and was not mentally competent when she conveyed the property to Ms. Anderson. She alleged that Ms. Anderson had "[taken] advantage" of Miss Mittie's lack of competency and persuaded her to convey the property "by making false promises about the terms, status and consequences of the transaction." She alternatively asserted that Miss Mittie had not understood the transaction and that she had entered into it by mistake. Ms. Alexander alleged that Miss Mittie "never understood the terms or effect of the transaction." She claimed fraud in the inducement of the contract and, alternatively, mutual mistake. She prayed for the real property to be returned to Miss Mittie for her use and benefit; compensatory damages in the amount of $50,000; and punitive damages in an amount equal to the value of the real property. She attached to her complaint a warranty deed by which Miss Mittie conveyed the property to Ms. Anderson for consideration in the amount of $10.00, but retained a life-estate.

On January 6, 2010, Appellee JB Partners filed a motion to intervene in the matter. In its motion, JB Partners asserted that Ms. Anderson had listed the property for sale on June 20, 2009; that, on July 10, 2009, Bryan Church (Mr. Church) had entered into a contract to purchase the property; and that Mr. Church had assigned his interest in the property to JB Partners on August 25, 2009. JB Partners asserted that it was a *bona fide* purchaser for value and had an equitable interest in the property under the doctrine of equitable conversion. JB

---

[1]Mittie Taylor Alexander was referred to at trial as Miss Mittie.

[2]Ms. Alexander filed a motion to amend her complaint on May 28, 2010. In her amended complaint, Ms. Alexander asserted Ms. Anderson attempted to "steal" the property from Miss Mittie, and that she had told Miss Mittie that she "would pay her for the property." The trial court granted Ms. Alexander's motion to amend on June 18, 2010.

Partners attached a proposed petition for declaratory judgment to its motion.

Ms. Anderson answered on January 19, 2010, denying Ms. Alexander's claims. Ms. Anderson asserted that Miss Mittie met privately with her attorney prior to the conveyance, and that the deed transferring the property was drawn by Miss Mittie's attorney out of Ms. Anderson's presence. Ms. Anderson also asserted that Miss Mittie was competent when she conveyed the property, and that the property was "abandoned." Ms. Anderson pled the affirmative defenses of the statute of limitations, laches, promissory estoppel and equitable estoppel.

The trial court granted JB Partners' motion to intervene on January 22, 2010, and JB Partners filed a complaint for declaratory judgment against Ms. Alexander on the same day. In its complaint, JB Partners asserted that it was a *bona fide* purchaser of the property, and that it held superior title under the doctrine of equitable conversion. Ms. Alexander answered on March 16, 2010, asserting, *inter alia*, that JB Partners was not a *bona fide* purchaser and that it was guilty of unclean hands. Ms. Alexander also filed a motion to dismiss JB Partners' claim for failure to state a claim, asserting it was not a *bona fide* purchaser and that the doctrine of equitable conversion was not applicable in this case. Following a hearing on September 22, 2010, the trial court entered judgment in favor of JB Partners, holding that JB Partners had superior title to the property based on the doctrine of equitable conversion. It also entered an order assessing discretionary costs against Ms. Alexander. On March 4, 2011, the trial court entered an order making its judgment in favor of JB Partners final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Ms. Alexander filed a timely notice of appeal to this Court.

### Issues Presented

Ms. Alexander raises the following issues for our review:

(1)     Whether the trial court erred in finding the doctrine of equitable conversion applied to the contracts for sale between JB Partners and Starlene Anderson.

(2)     Whether the trial court erred in finding JB Partners to be a *bona fide* purchaser.

(3)     Whether the trial court erred in not barring JB Partners' claim based on the doctrine of unclean hands.

(4)     Whether the trial court erred in denying Mittie T Alexander's motion

-3-

to dismiss the intervening complaint of JB Partners.

(5)      Whether the trial court erred in finding that Mittie T. Alexander waived the defense of notice of lien *lis pendens*.

(6)      Whether the trial court erred in finding that Mittie T. Alexander waived the defense of notice of lien *lis pendens* for failure to attach the notice to her complaint.

(7)      Whether the trial court erred in awarding JB Partners attorney['s] fees for seeking to have a motion to deem requests for admissions deemed admitted.

### *Standard of Review*

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo,* however, with no presumption of correctness. *Tidwell v. Memphis, 193 S.W.3d 555, 559* (Tenn. 2006)*.* Our review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *State v. Ingram, 331 S.W.3d 746, 755* (Tenn. 2011).

### *Discussion*

We begin our discussion by emphasizing that the gravamen of this lawsuit is whether the conveyance of real property by Miss Mittie to Ms. Anderson should be set aside due to incapacity to contract on the part of Miss Mittie when the deed conveying the property was executed. That issue has not been litigated as far as we can determine from the record before us. We note, moreover, that as far as we can discern from the record, Ms. Anderson has not attempted to disavow the contract for sale to JB Partners. Rather, the trial court's judgment effectively declares that, under the doctrine of equitable conversion, JB Partners' interest in the real property is superior to all others, regardless of whether the conveyance of the property to Ms. Anderson should be set aside on the basis of incapacity to contract. With this in mind, we turn to the issues presented.

We first address Ms. Alexander's assertion that the trial court erred by determining that she waived the defense of notice of lien *lis pendens*. JB Partners asserts in its brief that this issue is irrelevant and moot. We agree. The trial court's judgment in this matter was grounded not on the question of notice of lien *lis pendens*, but on the doctrine of equitable

conversion. Although the trial court found that Ms. Alexander's notice did not comport with Tennessee Code Annotated § 20-3-101, and accordingly was void, the trial court also correctly found that the contract executed by Mr. Church and assigned to JB Partners pre-dated the filing of her complaint against Ms. Anderson. JB Partners was not prejudiced by any deficiency in the notice.

We next turn to Ms. Alexander's assertion that JB Partners' complaint for declaratory judgment is barred by the doctrine of unclean hands. Ms. Alexander asserts that, because JB Partners and Ms. Anderson did not close on the property by the closing date recited in the initial contract for sale, September 30, 2009, but twice amended the contract to extend the closing date and to decrease the purchase price, JB Partners deceived the court and its claim should be barred based on unclean hands.

Under the doctrine of unclean hands, "'a complainant, who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction, cannot have the aid of a Court of Equity in enforcing any alleged rights growing out of such transaction.'" *Riverside Surgery Center, LLC v. Methodist Health Systems, Inc.*, 182 S.W.3d 805, 813 (Tenn. Ct. App. 2005) (quoting *Hogue v. Kroger Co.,* 213 Tenn. 365, 373 S.W.2d 714, 716 (1962) (quoting Gibson's Suits in Chancery § 51)). "'Once found to exist, the doctrine of unclean hands repels the unclean plaintiff at the steps of the Courthouse.'" *Id.* (quoting *Farmers & Merchants Bank v. Templeton,* 646 S.W.2d 920, 924 (Tenn. Ct. App.1983)). Upon review of the record, the evidence does not preponderate against the trial court's finding that JB Partners did not take actions which would constitute unclean hands. JB Partners and Ms. Anderson executed a contract for sale before Ms. Alexander filed her lawsuit. Delaying the closing date pending resolution of the issues is neither fraudulent nor deceptive, and the amount of the purchase price is irrelevant to the issues presented by this lawsuit. Accordingly, we find this issue to be without merit.

We next turn to Ms. Alexander's contention that the trial court erred by denying her motion to dismiss for failure to state a claim. A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim tests only the legal sufficiency of the complaint itself. *Cook v. Spinnakers of Rivergate, Inc.*, 878 S.W .2d 934, 938 (Tenn. 1994). The grounds for such a motion are that the allegations of the complaint, if considered true, are not sufficient to constitute a cause of action as a matter of law. *Id.* A motion to dismiss should be granted only if it appears that the plaintiff cannot establish any facts in support of the claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). We review a trial court's disposition of a motion to dismiss *de novo*, with no presumption of correctness. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

Ms. Alexander asserts that JB Partners' claim should have been dismissed because,

as a matter of law, JB Partners was not a *bona fide* purchaser. Ms. Alexander contends that, despite the payment of earnest money in the amount of $2500 by Mr. Church to Ms. Anderson prior to the assignment of the contract to JB Partners, no valid contract existed where the original closing date expired on September 30, 2010. Her argument, as we perceive it, is that the contract between Ms. Anderson and JB Partners expired despite amendments extending the closing date, and that JB Partners accordingly had no interest in the property.

It is undisputed that JB Partners and Ms. Anderson executed a contract for sale of the real property before Ms. Alexander commenced her action against Ms. Anderson, and that the initial closing date was shortly after Ms. Alexander filed her complaint. It is also undisputed that the closing date was amended twice during the pendency of this action. JB Partners filed a complaint for declaratory judgment seeking a declaration of its interests in light of its contract with Ms. Anderson, and asserted that its rights should be declared superior. Construing JB Partners' allegations as true, we agree with the trial court that JB Partners stated a claim and affirm denial of Ms. Alexander's motion to dismiss.

We turn next to Ms. Alexander's argument that the trial court erred by awarding JB Partners attorney's fees incurred for the filing of a motion to deem requests for admissions admitted. On August 23, 2010, the trial court entered an order following an August 6 hearing on JB Partners' motion to have all matters admitted. In its order, the trial court stated:

> It further appearing that the Third Party Intervener has incurred reasonable attorney's fees in the amount of [s]even hundred fifty dollars ($750.00) in bringing this motion, it is therefore further ORDERED that Teresa Alexander, Plaintiff and her counsel pay [s]even hundred fifty dollars ($750.00) as her reasonable expenses in bringing said motion.

In its brief, JB Partners asserts the trial court ordered Ms. Alexander to pay its attorney's fees as sanctions for failing to respond timely to its discovery requests. It asserts the trial court did not abuse its discretion in awarding sanctions for pre-trial discovery matters. Ms. Alexander, on the other hand, asserts the Rules of Civil Procedure do not provide for an award of attorney's fees for the filing of a motion to deem matters admitted.

Trial courts generally have broad discretion over discovery matters, including the determination of appropriate sanctions for discovery abuses. *E.g., Parks v. Mid-Atlantic Finance Co., Inc.*, 343 S.W.3d 792, 802 (Tenn. Ct. App. 2011). It is well settled, however, that a court speaks through its orders and not through the transcript. *E.g., Steppach v. Thomas*, 346 S.W.3d 488, 522 (Tenn. Ct. App. 2011)(quoting *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001)). As we noted in *Steppach*, we review the trial court's written

orders on appeal. *Id.* (quoting *Shelby v. Shelby*, 696 S.W.2d 360, 361 (Tenn. Ct. App. 1985).

There is nothing in the trial court's August 23 order that indicates an award of sanctions for discovery abuse in this case. Additionally, in its August order, the trial court ordered, upon agreement of the parties, the deletion of two of JB Partners' requests for admissions. Upon review of the record, we find neither a motion for sanctions nor a reply to such a motion. More importantly, the trial court made no finding of abuse in the discovery process, and there is nothing in the record to demonstrate abuse. Tennessee courts generally follow the "American Rule" with respect to attorney's fees, requiring each party to pay their own attorney's fees in the absence of a statute or contractual provision providing otherwise. *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn.2005) (citation omitted). In the absence of an order making a finding of abuse in the discovery process and awarding attorney's fees as sanction for such abuse, we reverse the award of attorney's fees in the amount of $750.00 to JB Partners.

We turn next to the dispositive issue which, as we perceive it, is whether the trial court erred by holding that, under the doctrine of equitable conversion, JP Partners' claim to the property is superior to that of all others, and specifically to any claim Miss Mittie would have if the conveyance to Ms. Anderson is set aside on the grounds of incapacity to contract. JB Partners asserts that, under Tennessee case law, the doctrine of equitable conversion vests it with superior title where JB Partners is the purchaser under a validly executed contract for sale. In its brief to this Court, JB Partners relies on *Alley v. McLain's Inc. Lumber and Construction* for the proposition that

> the general rule is stated that a contract for the sale of land operates as an equitable conversion and the vendee's interest under the contract becomes realty and the vendor's interest becomes personalty, and in equity the vendee is regarded as the owner, subject to liability for the unpaid price, and the vendor is regarded as holding only the legal title in trust for the vendee from the time a valid contract for the purchase of land is entered into.

*Alley v. McLain's Inc.*, 182 S.W.3d 312, 318 (Tenn. Ct. App. 2005)(quoting *Campbell v. Miller*, 562 S.W.2d 827, 831-32 (Tenn. Ct. App. 1977)(quoting 77 Am.Jur.2d 478–479, "Vendor and Purchaser," Sec. 317)). Ms. Alexander, on the other hand, asserts that JB Partners is not a *bona fide* partner where the sale was not closed.

We begin our discussion of this issue by noting that the doctrine of equitable conversion "is not a fixed rule of law." *Id.* at 319 (quoting *Fowler v. Plunk*, 7 Tenn. App. 29, 34, 1928 WL 1991 at *4 (Tenn. Ct. App. 1928)). It does not automatically vest superior title in a purchaser upon execution of the contract for sale. Indeed, we have emphasized that

the doctrine should be applied only to accomplish results demanded by equity, and that "*constant watchfulness*" must be maintained "*to guard against a tendency to make of it a formal rule de jure, regardless of its real purpose and necessity.*" *Id.* (quoting *id.* (emphasis added)). Being so grounded in the principles of equity, application of the doctrine is "affected by the connection in which it is invoked." *Id*. (quoting *id*.) Under the doctrine, although no "real conversion" has occurred, the property will be treated as if a conversion had occurred "for the purpose of [a] will or other instrument so far as may be necessary and only so far." *Id*. (quoting *id*.).

In *Alley*, plaintiff/seller Alley and defendant/buyer Snodgrass executed a contract for sale of plaintiff's real property. Snodgrass offered defendant McLain's Lumber a contract for the sale of timber on the property, which McLain's Lumber accepted. The contract recited that Snodgrass was the owner of the property, and McLain's Lumber relied on Snodgrass's assertion. Upon discovery of the cutting of timber by the real estate agent, McLain's Lumber was instructed to cease cutting, which it did immediately. *Id.* at 314-15. In an action commenced by Alley to recover damages for the wrongful cutting of timber, defendants asserted the doctrine of equitable conversion to shield McLain's Lumber from liability. The trial court applied the doctrine; we reversed on appeal. *Id*. at 318.

As noted above, we observed in *Alley* that the doctrine of equitable conversion will be applied despite no actual conversion only when equity so demands. It was undisputed in *Alley* that Snodgrass had paid no consideration in support of the contract for sale. We further stated that, "[m]ore importantly," nothing in the record suggested that Snodgrass had any right to take possession of the property before closing. *Id.* at 318. We distinguished *Alley* from *Rackley v. DeKalb County Fire Department*, a case in which the doctrine of equitable conversion was applied to shield the defendant fire company from damages for trespass where the buyers of real property gave the defendant permission to burn a house located on the property. *Id*. at 319 (citing *Rackley v. DeKalb County Fire Dep't.*, No. M2000-00885-COA-R3-CV, 2000 WL 1586464 (Tenn. Ct. App. Oct. 25, 2000)). We noted that the buyers in *Rackley*, in addition to executing a contract for sale and making a down payment on the property, had the right to take possession of the property, had in fact taken possession, and "'treated the property as their own.'" *Id*. at 318 (quoting *id*.) .

In the September 2010 hearing before the trial court in this case, Mr. Church described JB Partners as a partnership that "invest[s] mainly in local real estate and puts deals together kind of like puzzle pieces, and that's about it." On July 12, 2010, prior to the filing of this lawsuit and before Ms. Alexander was appointed conservator for Miss Mittie, Mr. Church and Ms. Anderson entered into a contract for sale and Mr. Church paid earnest money in the amount of $2500. On August 25, Mr. Church assigned his interest to JB Partners. It is undisputed that the closing date was postponed at least twice, and that JB Partners had no

right to take possession of the property before the closing date. Item four of the purchase and sale contract contained in the record provides that Mr. Church/JB Partners would obtain possession of the property only upon delivery of the warranty deed and payment of the purchase price, and item fourteen provided that the seller, Ms. Anderson, would bear all risk of loss or damage until transfer of title to the property. Further, it is undisputed that Miss Mittie maintained a life-estate in the property when she conveyed it to Ms. Anderson; that the contract executed by Mr. Church and Ms. Anderson was for the purchase of Ms. Anderson's interest in the property; and that JB Partners knew that Miss Mittie had retained a life-estate when it executed the contract with Ms. Anderson. Thus, JB Partners obtained no right to possession, and could not obtain title in fee simple until after the death of Miss Mittie. Whether Miss Mittie lacked capacity to contract when she conveyed her property to Ms. Anderson has yet to be adjudicated by the trial court.

"The doctrine of equitable conversion is the outgrowth of the old maxim that equity regards that as done which ought to have been done." *Fowler v. Plunk*, 7 Tenn. App. 29 (Tenn Ct. App. 1929), 1928 WL 1991, at *4. The equities of this case simply do not demand application of the doctrine of equitable conversion.

### *Holding*

In light of the foregoing, we reverse the judgment of the trial court applying the doctrine of equitable conversion to this case. We also reverse the award of attorney's fees in the amount of $750.00 to JB Partners. The judgment of the trial court is otherwise affirmed. This matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellee, JB Partners.

_____
DAVID R. FARMER, JUDGE