# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 22, 2014 Session

## ANIL CONSTRUCTION, INC. v. PATRICK D. McCOLLUM, INDIVIDUALLY AND D/B/A/ PAT'S CUSTOM CABINETS

**An Appeal from the Chancery Court for Madison County**
**No. 67465     William B. Acree, Jr., Chancellor**

---

**No. W2013-01447-COA-R3-CV - Filed August 7, 2014**

---

This appeal involves an alleged breach of a construction contract. The plaintiff general contractor hired the defendant subcontractor to build cabinetry for a new movie theater. The work was to be completed by the time the movie theater opened. At the time of the opening, some items regarding the cabinets remained undone, and the contractor refused to pay until the work was completed. The general contractor filed this lawsuit for breach of contract for failure to complete the project in a timely manner and for defective work, and the defendant subcontractor filed a counterclaim for breach of contract for failure to pay under the contract. The trial court held in favor of the subcontractor and awarded damages. The general contractor now appeals. We vacate the trial court's judgment and remand the matter for findings of fact and conclusions of law as required under Tennessee Rule of Civil Procedure 52.01.

**Tenn. Rule App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Vacated and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Adam M. Nahmias, Memphis, Tennessee, for the Plaintiff/Appellant, Anil Construction, Inc.

Jon A. York, Jackson, Tennessee, for the Defendant/Appellee, Patrick D. McCollum, Individually and d/b/a Pat's Custom Cabinets

## OPINION

### FACTS AND PROCEEDINGS BELOW

Ambarish Keshani is in the business of managing movie theaters. He uses his own construction company, Plaintiff/Appellant Anil Construction, Inc. ("Anil Construction"), to build the movie theaters he manages.

Mr. Keshani, through Anil Construction, began construction on a new movie theater in Jackson, Tennessee, the Cinema Planet 10 ("Cinema 10"). On April 13, 2010, Anil Construction executed a contract with subcontractor Defendant/Appellee Patrick McCollum, d/b/a Pat's Custom Cabinets ("Mr. McCollum"), for Mr. McCollum to build all of the cabinetry for the Cinema 10. The contract detailed the seven specific areas in Cinema 10 where Mr. McCollum was to install cabinets. In return, the parties agreed, Anil Construction would pay Mr. McCollum a total contract price of $44,650 — half ($22,325) upon execution of the contract, and the other half 15 days after completion of the cabinet project. The contract describes the cabinet work as a "turn-key" job, that is, both parties anticipated that the subcontractor would complete the entire project. The contract also stated that the job needed to be completed by the scheduled opening of the theater in June 2010, and that time was of the essence:

> Opening of [the] movie theatre in June, 2010 (Tentative date being June 11 but could move one or two weeks) is critical to Anil Construction Inc and Pat's Cabinet understands that clearly and agrees to accommodate Anil Construction as needed. . . . Time is of an essence.

As is often the case, things did not go as planned. The Cinema 10 opening did not occur in June 2010 as stated in the contract. For reasons that are disputed in the record, the opening was delayed until October 1, 2010. Moreover, the cabinets were not completed by the delayed October 1, 2010 opening. The record contains various email communications between the parties regarding the delay. In many of them, Mr. Keshani is urging Mr. McCollum to complete the job; in others, Mr. McCollum is pressing Mr. Keshani to pay him the balance owed on the contract. Mr. Keshani asserted that the delays in completion were caused by Mr. McCollum. Mr. McCollum in turn maintained that the delays were caused by factors outside of his control. Mr. McCollum would later testify at trial that the cabinetry work was installed and in use by October 12, 2010.

In November 2010, Mr. Keshani sent emails to Mr. McCollum accusing him of taking items from the Cinema 10 that he was not authorized to take. Mr. Keshani's emails also listed 15 items regarding the cabinetry that were allegedly incomplete. He forbade Mr. McCollum

from going onto the theater property without arranging it in advance in writing with Mr. Keshani personally. Mr. Keshani told Mr. McCollum that he did not consider the job to be complete until all of the listed items were done, and he made it clear that he would not pay the balance of the contracted fee until all of them were resolved.

In an effort to address their disagreement, Mr. Keshani and Mr. McCollum had a face-to-face meeting on November 23, 2010. It did not go well. Mr. Keshani emphasized the items that still needed to be resolved, and Mr. McCollum insisted on getting payment from Mr. Keshani. According to Mr. Keshani, the meeting culminated in Mr. McCollum threatening him with bodily harm.

After that, both sides threatened legal action. On December 1, 2010, Mr. Keshani emailed Mr. McCollum that he would pay Mr. McCollum the contract balance "[o]nce you complete all of the remaining items." The email added: "This is my final attempt before proceeding with legal action . . . ." Two days later, Mr. McCollum's attorney sent Mr. Keshani a letter demanding payment under the contract for work completed. If Mr. Keshani failed to respond by December 24, 2010, the letter said, Mr. McCollum would pursue legal action.

On December 16, 2010, Anil Construction filed this lawsuit against Mr. McCollum, individually and d/b/a Pat's Custom Cabinets, in the Chancery Court for Madison County, Tennessee. The complaint alleged breach of contract for failing to complete the cabinets in a timely and workmanlike manner, and sought damages "in an amount to be proven at trial." Mr. McCollum responded by filing a counterclaim for the balance due under the contract. This prompted numerous affirmative defenses. Anil Construction's initial answer to the counterclaim asserted the affirmative defense of first-to-breach, claiming that Mr. McCollum was barred from recovery because he first breached the contract. Anil Construction later amended its answer to the counterclaim to include the affirmative defenses of set-off, recoupment, and duress. Discovery ensued.

On March 11, 2013, the trial court conducted a bench trial. It heard testimony from Mr. Keshani, an expert witness on construction, and Mr. McCollum.

Mr. Keshani testified at the outset. He said that, in the beginning of the Cinema 10 project, he worked primarily with Mr. McCollum's employee, Jimmy Lloyd. Mr. Lloyd assured Mr. Keshani that the cabinets would be completed and ready to install by the end of July 2010. This proved not to be true. The delay with the cabinets, Mr. Keshani said, kept other trades from completing their portions of the movie theater project, such as the electric work, the tiling, and the plumbing.

Mr. Keshani testified that, on August 20, 2010, he emailed Mr. McCollum to relay his concern about the continued delays. The email stressed that Mr. McCollum's tardiness in completing the cabinetry was "causing serious delays in our opening." In his response, Mr. McCollum asked for certain information from Mr. Keshani, but assured Mr. Keshani that he would continue to work on the cabinetry "in full force until completed." Shortly after that, on August 23, 2010, the parties signed a "Memorandum of Understanding" that outlined minor changes to the contract and, consistent with Mr. McCollum's email, said that Mr. McCollum would "put full force to complete the job." At that time, Mr. Keshani testified, the Cinema 10 was ready for installation of the cabinets. Despite all of this, Mr. McCollum did not complete the cabinets.

On September 1, 2010, Mr. Keshani emailed Mr. McCollum to inform him that he planned to open the Cinema 10 on September 10 and to press him to complete the cabinets. The email said that, at that stage in construction, Mr. Keshani "had very large daily interest charges on daily basis, and I cannot afford delay." A week later, on September 7, Mr. Keshani sent another email to Mr. McCollum listing the uncompleted items that were hindering the September 10 theater opening. The missing or incomplete items included trash cans, a liquor cabinet, a bar counter top, doors for the bar, and a door for the concession stand. Mr. Keshani testified that he tried to call Mr. McCollum, to no avail. Mr. McCollum did not return his telephone calls and did not respond to his email listing the uncompleted items. The cabinetry work was not completed and the theater did not open on September 10.

Mr. Keshani testified that he went to Mr. McCollum's cabinet shop and saw an employee working on a different project. The employee told Mr. Keshani that Mr. McCollum had instructed him to work on the other customer's job. On another occasion, Mr. Keshani said, when Mr. McCollum had assured him that he was working on the Cinema 10 project, Mr. Keshani went to the cabinet shop to check and Mr. McCollum turned Mr. Keshani away at the door.

Finally, despite the fact that the cabinetry was still not complete, Mr. Keshani opened the Cinema 10 on October 1, 2010. In an October 6, 2010 email to Mr. McCollum, Mr. Keshani confirmed their telephone conversation in which Mr. Keshani agreed to pay $200 for a television mount and Mr. McCollum agreed to complete the installation of the cabinets by October 12, 2010. October 12 came and went, Mr. Keshani said, and the cabinet work was not completed.

Over the next few weeks, Mr. Keshani said, Mr. McCollum's employees worked at the Cinema 10 for brief periods, addressing the unresolved cabinet work. In the course of doing so, Mr. McCollum's employees took necessary items out of the movie theater, ostensibly to

work on them. The items taken out of the theater included trash cans, steel poles, and glass doors. All the while, the Cinema 10 was in operation.

Mr. Keshani testified that he refused to pay Mr. McCollum the remainder of the contract price because he did not complete the job. On November 15, 2010, Mr. Keshani sent an email to Mr. McCollum listing 15 items that would have to be resolved before he would consider the job complete. This email was entered into evidence as Exhibit 21. Item number 15 on the list said that the cabinetry on the concession stand did not have a toe kick on the customer side.[1] Mr. Keshani acknowledged that the contract did not mention a toe kick, but insisted that toe kicks are standard in the industry for that type of cabinet and should have been included in the Cinema 10's concession stand. He said that he had never seen a concession stand without a toe kick in the front and in the back as well. Referring to the list of uncompleted items in Exhibit 21, the trial judge asked Mr. Keshani, "Is this basically a punch list or is this items that have not been done at all?" Mr. Keshani responded, "[I]t includes both."

Mr. Keshani testified about his November 23, 2010 meeting with Mr. McCollum, in which they discussed the list of 15 unresolved items. Mr. McCollum told him that, in order to put a toe kick in the Cinema 10 concession stand, he would have to remove the concession stand from the theater premises. At the conclusion of the meeting, Mr. Keshani perceived that Mr. McCollum took a picture of Mr. Keshani with his cell phone. When Mr. Keshani asked him what he was doing, Mr. McCollum replied, "Well, you'll find out. . . . [M]aybe you'll never find out, you'll never be around to find out or something like that." Mr. Keshani took that as a threat.

After the November 2010 meeting, Mr. Keshani said, neither Mr. McCollum nor his employees came back to the Cinema 10 project. The next communication Mr. Keshani received was the December 2010 letter from Mr. McCollum's attorney demanding payment.

Mr. Keshani called a construction expert, George Bedocs, to testify on his behalf. Mr. Bedocs examined Mr. McCollum's cabinet work at the Cinema 10, and he corroborated Mr. Keshani's assertion that all 15 of the items on the Exhibit 21 list needed to be completed. He estimated that the total cost to complete or repair all of the items on the list would be about $17,050. Mr. Bedocs did not break out the cost of adding a toe kick to the concession stand, but acknowledged that the cost of that item comprised most of the total $17,050

---

[1]A "toe kick," also called a "toe space," is a four- to six-inch gap at the bottom of a cabinet, at the floor level. The toe kick allows a person to stand next to the cabinet without hitting their toes on the cabinet, by giving room for the person's toes to go into the space under the cabinet.

amount. Mr. Bedocs testified that Mr. McCollum's work at the Cinema 10 did not conform to the industry standards in the community.

Mr. McCollum testified on his own behalf. He conceded that time was of the essence on the cabinetry work for the Cinema 10, as stated in the parties' contract. He claimed, however, that completion of the cabinetry for the movie theater was delayed by some of Mr. Keshani's changes, and he said that he did not always have all of the necessary information from Mr. Keshani. Mr. McCollum also said generally that the work of some of the other trades in the Cinema 10 delayed completion of the cabinets; he did not specify dates or estimate the amount of delay caused by others.

Mr. McCollum said that, once Mr. Keshani decided that he only wanted to interface with Mr. McCollum by email, it became difficult for them to communicate because Mr. McCollum was rarely at his computer. When he did speak to Mr. Keshani, Mr. McCollum testified, he assured Mr. Keshani that he was willing to resolve the 15 items on Mr. Keshani's list. Initially, Mr. McCollum said that Mr. Keshani would not let him on the Cinema 10 property to complete the 15 unresolved items. Later in his testimony, Mr. McCollum clarified that Mr. Keshani allowed him on the theater property during the project, but after the November 23, 2010 meeting, Mr. McCollum's attorney advised him not to go back to the project site. Mr. McCollum denied Mr. Keshani's claim that he threatened Mr. Keshani at the November 23, 2010 meeting, and added that Mr. Keshani was paranoid.

Mr. McCollum maintained that toe kicks are not standard for all types of cabinetry. However, he acknowledged in his testimony that he was obligated to resolve the 15 items listed in Mr. Keshani's email and had agreed to do so. He also conceded that, by the time of his November 23, 2010 meeting with Mr. Keshani, the 14 other items on the list were not completed. After discussing what he would need to do to fix or complete the other items listed in Mr. Keshani's email, Mr. McCollum said that it would cost him "around $1200" in labor to resolve those items.

At the conclusion of the trial, the trial court issued an oral ruling in favor of Mr. McCollum. It found that the Cinema 10 movie theater did not open until October 1, 2010, and that the delay in opening was "caused by a . . . number of reasons. [The delays] were caused by the plans being incomplete, by the weather, according to the Plaintiff, by actions or inactions of other subcontractors, and to some degree by the Plaintiffs." It found that Mr. McCollum's fault in the delays "was minimal in the Court's opinion, thus, the Court finds that the Defendant did not breach the contract by failing to timely fulfill his obligations under the contract." The trial court held that Mr. McCollum "has substantially complied with the contract and has not breached the contract."

The trial court also noted that the 15 items set forth in Exhibit 21 "have not been repaired for the most part." Referring to items 1 through 14 on Exhibit 21, the trial court found, "the problems can be repaired or fixed in a short time frame and at a relatively small cost." It found specifically that, as of the time of trial, the repairs had not been made to these items "because of disagreement between the parties." As to the last item on the list, the toe kick, the trial court held that Mr. McCollum "did not breach the contract by failure to install the toe kick as he was not required to do so under the contract."

The trial court then awarded damages to Mr. McCollum. It observed that Mr. Keshani had "not presented a precise amount for repair or correction of Items 1 through 14," and that Mr. McCollum's estimate for the repair of those 14 items was $1,200. Based on this, the trial court awarded Mr. McCollum damages in the amount he requested, $24,463 less the $1,200 he estimated it would cost him to resolve items 1 through 14, for a total award of $23,263. The trial court also awarded prejudgment interest to Mr. McCollum at a rate of 10% from December 24, 2010, the deadline Mr. McCollum had established for payment in his December 2010 demand letter to Mr. Keshani.

On May 22, 2013, the trial court entered a written order holding in favor of Mr. McCollum. The written order did not recount the earlier oral ruling, nor did it incorporate the oral ruling by reference. The written order states only:

> The Court finds that McCollum performed the contract in accordance with the agreement of the parties and did not breach the contract. The Court finds that Anil breached the contract by failing to pay the balance of the contract price owed to McCollum in the amount of $23,263.00.

The trial court ordered Anil Construction to pay Mr. McCollum damages in the amount of $23,263, plus prejudgment interest "from and after the date of December 24, 2010 . . . ." From this order, Anil Construction now appeals.[2]

---

[2]After the notice of appeal was filed in this case, this Court entered an order holding that the trial court's May 22, 2013 order was not final because it did not dispose of Mr. McCollum's counterclaim, his request for attorney fees, or his motion for an award of costs. Consequently, on October 7, 2013, the trial court entered an order rejecting Mr. McCollum's counterclaim for attorney fees and expenses. The order stated: "There was no legal basis in this suit for an award of attorney fees and such claim had been abandoned. . . . Likewise, there was no motion for discretionary costs, and, therefore, none were awarded." The appellate court then concluded that the appeal was from a final judgment and considered the appeal on its merits.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Anil Construction raises two issues:

> 1. Whether the trial court erred when it held that Mr. McCollum was not guilty of the first material breach of the contract, and that Mr. McCollum substantially complied with its terms?

> 2. Whether the trial court erred by failing to rule on any of the affirmative defenses alleged by Anil Construction?

In a bench trial, we review a trial court's findings of fact *de novo* on the record and presume them to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review a trial court's conclusions on issues of law, however, *de novo* with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

## ANALYSIS

On appeal, Anil Construction raises substantive issues that require a detailed review of the trial court's findings of fact and conclusions of law. To our dismay, we find none in this record. In its May 22, 2013 order, the trial court concluded only that "McCollum performed the contract in accordance with the agreement of the parties and did not breach the contract." The order awards Mr. McCollum $23,263, but includes no explanation of how the trial court arrived at this total amount of damages. Although the trial court issued an oral ruling at the conclusion of the trial, it was not incorporated by reference into the May 22, 2013 written order.

Prior to July 1, 2009, Rule 52.01 required trial courts to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, 337 S.W.3d 771, 791 n.12 (Tenn. Ct. App. 2010). Effective July 1, 2009, Rule 52.01 of the Tennessee Rules of Civil Procedure was amended to require trial courts to make specific findings of fact and conclusions of law in all bench trials, regardless of whether the parties request them. *See Bell v. Trull*, No. W2013-00398-COA-R3-CV, 2013 WL 5447289, at *3 (Tenn. Ct. App. Sept. 30, 2013) (citations omitted). Rule 52.01 provides, in relevant part:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the

court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

Tenn. R. Civ. P. 52.01.

We have emphasized that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (discussing the Section 36-1-113(k) requirement in that a trial court make "specific findings of fact" in parental termination cases). The requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *see White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). "Without such findings and conclusions, this Court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)).

Detailed findings of fact and conclusions of law are particularly important in construction lawsuits, in which the appellate court is usually required to ascertain whether the record supports a finding of breach of the parties' contract with respect to each of numerous alleged construction deficiencies. Indeed, even before Rule 52.01 was amended to mandate specific findings of fact and conclusions of law in all cases, this Court has found it necessary to remand construction lawsuits for detailed findings, to enable the appellate court to conduct an effective review the trial court's decision. *See, e.g., John Allen Constr., LLC v. Hancock*, No. W2004-02920-COA-R3-CV, 2006 WL 473732, at *5-6 (Tenn. Ct. App. Mar. 1, 2006) (remanding pursuant to Section 27-3-128, which authorized a remand "when the trial court has failed to make adequate factual findings necessary for the appellate court to make a just determination of the issues on appeal"). We emphasized this principle in a more recent construction case:

> Even if the amendment to Rule 52.01 were not applicable to the trial court's decision, we would have little choice but to remand the case for findings of fact and conclusions of law. Specific findings of fact are of particular importance in a construction case such as this. In general, construction cases rarely lend themselves to a global finding that one party or the other was entirely at fault; frequently the quality of the construction may be in compliance with the applicable standards in some respects but not in others,

and the oral communications over the course of the construction can lead to an array of misunderstandings and differing accounts of events. This case is no exception. Appellate review demands a detailed examination of the trial court's findings as to each specific item or event that the parties dispute. That is not possible in the absence of specific findings of fact and conclusions of law by the trial court.

*Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *5 (Tenn. Ct. App. June 9, 2011) (footnote omitted).

As noted above, the trial court below rendered an oral ruling at the conclusion of the trial. It did not, however, incorporate the oral ruling into its written order. It is well-settled that a trial court speaks through its written orders — not through oral statements contained in the transcripts — and that the appellate court reviews the trial court's written orders. *Conservatorship of Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011) (citations omitted); *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). This Court has explained:

The law of Tennessee is well settled on this issue:

> A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his judgment that he may deem proper, until it is entered on the minutes, and he may then change, modify, vacate or amend it during that term, unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days.

*Cunningham v. Cunningham*, No. W2006-02685-COA-R3-CV, 2008 WL 2521425, at *4-5 (Tenn. Ct. App. June 25, 2008) (quoting *Broadway Motor Co . v. Fire Ins. Co.*, 12 Tenn. App. 278, 280 (1930)). The *Cunningham* court emphasized: "We do not review the court's oral statements, unless incorporated in a decree, but review the court's order and judgments for that is how a court speaks." *Id.* (quoting *Shelby v. Shelby*, 696 S.W.2d 360, 361 (Tenn. Ct. App. 1985)).

If we were to consider the trial court's oral ruling as part of the written order in the instant case, that would not solve the problem, because the oral ruling also lacks enough specificity

-10-

to permit effective review of the trial court's decision. Anil Construction alleged breach by failure to complete the cabinetry in a timely manner and breach by performing work that was substandard, and Mr. McCollum alleged breach by failure to pay the contracted fee. Even though the claims and the counterclaims are for breach of contract, the trial court's oral ruling does not address interpretation of the parties' contract. What is the effect of the contractual provision indicating that the cabinet project was intended to be a "turn-key" job? Mr. McCollum did not disagree that time was of the essence in the parties' agreement, but the trial court did not address what the ultimate deadline was for completion of the cabinetry. Absent such a finding, it is not possible to ascertain whether Mr. McCollum met the contractual deadline, or whether his failure to meet the deadline was a material breach.[3] The undisputed testimony showed that the parties entered into various modifications of the original contract that involved both the substance of the cabinet work to be performed and the time frame, but neither the trial court's written order nor its oral ruling addressed the effect of any of these modifications to the original contract.[4] In particular, this was necessary to address Mr. Keshani's first-to-breach affirmative defense to Mr. McCollum's counterclaim for payment. The trial court found only that the items listed in Exhibit 21 were left undone "for the most part" and did not address which items remained undone by the contractual deadline. The trial court did not address whether Mr. McCollum's failure to complete the listed items was no breach at all or whether it was a breach but was not material, and whether it occurred before Mr. Keshani's alleged breach of his obligation to pay. We can surmise from the trial court's ruling that it rejected Mr. Bedocs' testimony in part and credited it in part, but we are unable to discern the trial court's reasoning. The trial court did not expressly address Mr. Keshani's affirmative defenses of set-off, recoupment, and duress, though it apparently "set-off" Mr. McCollum's claimed damages by $1,200.

On occasion, despite a trial court's failure to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct.

---

[3]The undisputed evidence showed that the Cinema 10 opened on October 1, 2010, and, according to Mr. McCollum, the cabinet work was not complete until October 12, 2010, *at the earliest*.

[4]For example, the August 23, 2010 "Memorandum of Understanding" outlined minor changes to the Cinema 10 cabinetry and stated expressly that Mr. McCollum would "put full force to complete the job." While Mr. McCollum testified in general terms about how others hindered his ability to complete the cabinetry, such as Mr. Keshani's modifications on cabinet colors and other subcontractors' delays, he professed not to remember specifically what impeded his performance during the period after execution of the Memorandum of Understanding, and the document itself did not identify any obstacles to his performance or refer to the existence of any.

-11-

App. Aug. 28, 2012)); ***Pandey v. Shrivastava***, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb. 22, 2013). Unfortunately, this is not a case in which we have that option. Although the trial court's oral ruling provides some guidance, it is not sufficient and cannot substitute for a written order with detailed findings of fact and conclusions of law. We observed in ***Lake***:

> However[] tempting it may be to enter a cursory order without findings of fact and conclusions of law in order to "get[ ] rid of this thing," Rule 52.01 mandates such findings. Moreover, they are necessary to give the parties the resolution they need. We have little choice but to vacate the trial court's judgment and remand the case with instructions to issue detailed findings of fact and conclusions of law as to both the complaint and the counter-complaint in this cause.

***Lake***, 2011 WL 2361563, at * 5 (quoting trial judge's remark). Likewise, in this case, the lack of Rule 52.01 findings and conclusions leaves us unable to give effective review to the trial court's decision, so we "have little choice" but to vacate the trial court's judgment and remand the matter to the trial court to make the requisite written findings of fact and conclusions of law. On remand, the trial court is instructed to issue detailed findings of fact and conclusions of law as to both the complaint and the counter-complaint, and to address each party's affirmative defenses.

## CONCLUSION

The decision of the trial court is vacated and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed one-half to the Appellant, Anil Construction, Inc., and its surety, and one-half to the Appellee, Patrick D. McCollum, Individually and d/b/a Pat's Custom Cabinets, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

-12-