IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2020

IN RE BRAYLA T.

Appeal from the Chancery Court for Franklin County
No. 234                    Melissa Thomas Blevins-Willis, Chancellor

_____

No. M2019-02265-COA-R3-PT

_____

In this termination of parental rights action, the father has appealed the trial court's final order terminating his parental rights to the minor child, Brayla T. ("the Child") based on several statutory grounds. The mother and the stepfather filed a petition to terminate the father's parental rights and to allow the stepfather to adopt the Child after the juvenile court adjudicated the Child dependent and neglected as to the father. The trial court found that statutory grounds existed to terminate the father's parental rights upon its determination by clear and convincing evidence that the father had abandoned the Child by willfully failing to visit the Child and had failed to manifest an ability and willingness to personally assume custody of or financial responsibility for the Child. The trial court also found clear and convincing evidence of two statutory grounds applicable solely to putative fathers. The trial court further found by clear and convincing evidence that it was in the Child's best interest to terminate the father's parental rights. The father has appealed. Having determined that the evidence presented at trial did not support a finding by clear and convincing evidence that the father was a putative father, we reverse as to those two statutory grounds applicable only to putative fathers. We affirm the trial court's judgment in all other respects, including the termination of the father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG, J., joined. RICHARD H. DINKINS, J., not participating.

Bradley D. Sherman, Winchester, Tennessee, for the appellant, Joshua T.

Sandra I. Schefcik, Estill Springs, Tennessee, guardian *ad litem*.[1]

Glen A. Isbell, Winchester, Tennessee, for the appellees, Cody M. and Elizabeth M.

**OPINION**

I.  Factual and Procedural Background

This appeal arose from the order of the Franklin County Chancery Court ("trial court") terminating the parental rights of the appellant, Joshua T. ("Father") on several statutory grounds and finding termination to be in the best interest of the Child. The Child was born in February 2011 to Elizabeth M. ("Mother") and Father, who were never married. The Franklin County Juvenile Court ("juvenile court") entered an order establishing Father's parentage as to the Child on August 10, 2011. On January 14, 2012, by agreement of Mother and Father, the juvenile court entered an order establishing a permanent parenting plan with respect to the Child, wherein Mother was designated as the primary residential parent. Father was to enjoy co-parenting time with the Child on the first, second, and fourth weekends of each month and some holidays. The juvenile court also ordered Father to pay monthly child support in the amount of $235.00 and to pay monthly retroactive support in the amount of $497.50.

On June 16, 2015, Mother filed an emergency petition in the juvenile court to suspend Father's visitation, averring, *inter alia*, that the Child had a cigarette burn on her arm and a handprint on her leg after she returned to Mother from Father's care. Mother also alleged that Father was not providing the Child with a stable home during his co-parenting time and was abusing drugs and alcohol. On July 29, 2015, the juvenile court adjudicated the Child dependent and neglected as to Father and suspended his visitation with the Child until such time as Father completed a hair follicle test and appeared in court. Father never complied with these requirements. According to the juvenile court's July 29, 2015 order, Father was initially present at the adjudicatory hearing but "stormed out" when he learned that the juvenile court intended to require a hair follicle test from him. The juvenile court proceeded with the hearing in Father's absence and adjudicated the Child dependent and neglected as to Father.

Mother and the Child's stepfather, Cody M. ("Stepfather") (collectively, "Petitioners"), were married on January 12, 2016. Petitioners filed a petition seeking to terminate Father's parental rights and to allow Stepfather to adopt the Child on November 28, 2017. Petitioners explained that the Child had been in the care and custody of Mother since the Child's birth. As grounds for termination of Father's parental rights, Petitioners

---

[1] The guardian *ad litem* submitted a brief adopting in full and joining in the brief of the mother and the stepfather.

averred that (1) as a putative father, Father had failed to seek reasonable visitation with the Child, and if visitation had been granted, had failed to visit altogether or had engaged in only token visitation pursuant to Tennessee Code Annotated § 36-1-113(g)(9)(A)(iii) (2017); (2) placement of the Child in Father's legal and physical custody, as a putative father, would pose a risk of substantial harm to the physical or psychological welfare of the Child pursuant to Tennessee Code Annotated § 36-1-113(g)(9)(A)(v) (2017);   (3) Father had abandoned the Child by willfully failing to visit the Child for four months preceding the petition's filing pursuant to Tennessee Code Annotated §§ 36-1-113(g)(1) (2017) and -102(1)(A) (2017); and (4) Father had failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child, and placing the Child in Father's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child pursuant to Tennessee Code Annotated § 36-1-113(g)(14) (2017).   Petitioners further asserted that termination of Father's parental rights was in the best interest of the Child and that Petitioners were capable of financially supporting the Child.

Father filed his answer on January 5, 2018, effectively denying all substantive allegations and averring that Mother had prevented him from visiting the Child since 2015. Father further averred that he had continued to make child support payments via court-ordered garnishment from his earnings.  Father requested that the trial court deny the termination petition and award him reasonable visitation with the Child through a new permanent parenting plan.  On May 16, 2019, the trial court entered an order appointing a guardian *ad litem* for the Child.

The trial court conducted a trial spanning two non-consecutive days in October 2019, during which all parties and their respective counsel were present.  At the conclusion of trial, the trial court issued an oral ruling and announced its findings as to the existence of two grounds to terminate Father's parental rights, namely (1) abandonment by willful failure to visit the Child, pursuant to Tennessee Code Annotated §§ 36-1-113(g)(1) and -102(1)(A), and (2) failure to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child pursuant to Tennessee Code Annotated § 36-1-113(g)(14).  Notably, following its oral ruling that Father was not found to be a putative father, the trial court further ruled that it had denied two statutory grounds for termination that related solely to putative fathers, specifically Tennessee Code Annotated § 36-1-113(g)(9)(A)(iii) and (v).  The trial court further proceeded to orally announce its ruling that termination was in the best interest of the Child upon analyzing the best interest factors delineated in Tennessee Code Annotated § 36-1-113(i) (2017).

On November 26, 2019, the trial court entered a written order terminating Father's parental rights.  The order properly reflected the trial court's oral ruling concerning the statutory grounds of abandonment by failure to visit the Child and failure to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child.  However, the order also "affirm[ed]" the two additional

statutory grounds related solely to putative fathers, Tennessee Code Annotated § 36-1-113(g)(9)(A)(iii) and (v), notwithstanding the trial court's incorporation as its findings of fact an excerpt from its oral ruling indicating the denial of statutory grounds applicable solely to putative fathers because the court did not find Father to be a putative father. Father timely appealed.

## II. Issues Presented

Father has raised the following three issues on appeal, which we have restated slightly as follows:

1.      Whether the trial court erred by determining that clear and convincing evidence existed to support termination of Father's parental rights on the ground of abandonment by willful failure to visit the Child.

2.      Whether the trial court erred by determining that clear and convincing evidence existed to support termination of Father's parental rights on the ground of failure to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child.

3.      Whether the trial court erred by finding clear and convincing evidence that termination of Father's parental rights was in the best interest of the Child.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not

absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). As our Supreme Court has explained:

> The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)]. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).

> Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

> * * *

> In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence,"

- 5 -

including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). In addition, as our Supreme Court has explained, this Court is required "to review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 525.

IV. Putative Father Statutory Grounds

At the outset, we address the trial court's ostensible finding of two statutory grounds for termination in its written order that are applicable solely to putative fathers, namely, a putative father's failure to seek reasonable visitation with the child, pursuant to Tennessee Code Annotated § 36-1-113(g)(9)(A)(iii), and that placement of the child in a putative father's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child pursuant to Tennessee Code Annotated § 36-1-113(g)(9)(A)(v). Although neither party has raised an issue on appeal concerning these grounds, we address them due to the constitutional interests involved. *See, e.g., In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Despite the trial court's oral ruling made at the conclusion of trial that these two grounds were inapplicable to Father because he was not a putative father, the trial court's written order states in relevant part:

> The Court <u>affirms</u> the grounds alleged by the Petitioners by clear and convincing evidence on the ground of failure to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation, as defined in § 36-1-102 pursuant to *Tenn. Code Ann.* § 36-1-113(g)(9)(A)(iii) and placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child pursuant to *Tenn. Code Ann.* § 36-1-113(g)(9)(A)(v) due to the grounds are for putative father[s] and <u>they would not apply to this case</u>.

(Underlined emphasis added.) Although the statement "affirm[ing]" these grounds appears to be a typographical error in the trial court's written order because of the internal inconsistency therein, we acknowledge the well-settled principle that a trial court speaks through its written orders and not through the transcript, and this Court reviews only the trial court's written orders. *See Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015); *Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011); *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977).

Tennessee Code Annotated § 36-1-113(g)(9)(A) provides grounds for terminating parental rights that are applicable only to putative fathers. *See* Tenn. Code Ann. § 36-1-113(g)(9)(A) ("The parental rights of any person who . . . is the putative father of the child may also be terminated based upon any one (1) or more of the following additional grounds . . . ."). However, as reflected by the trial court's oral ruling announced upon the conclusion

- 6 -

of trial, which was incorporated into the court's order as its findings of fact, Father was not a putative father. Because Father was not a putative father, the court determined at the conclusion of trial that the two statutory grounds related to putative fathers were inapplicable to Father.

Moreover, our thorough review of the record demonstrates that Father had been legally adjudicated as the father of the Child by the August 10, 2011 juvenile court order. Because these putative father grounds are inapplicable to Father, we reverse the trial court's order insofar as the court found clear and convincing evidence to support these two statutory grounds.[2]

V. Statutory Grounds for Termination of Father's Parental Rights

Tennessee Code Annotated § 36-1-113 (2017) lists the statutory requirements for termination of parental rights, providing in relevant part:

(a)     The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c)     Termination of parental or guardianship rights must be based upon:

(1)     A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)     That termination of the parent's or guardian's rights is in the best interests of the child.

---

[2] We note that this Court has previously vacated a trial court's permanent parenting plan order that contained an internal inconsistency when this Court could not reconcile the inconsistency with the other findings and conclusions within the order itself. *See Ghorley v. Ghorley*, No. E2015-02051-COA-R3-CV, 2016 WL 6651569, at *6 (Tenn. Ct. App. Nov. 10, 2016); *see also In the Matter of Anthony J. H.*, No. M2011-01839-COA-R3-JV, 2012 WL 5258245, at *1 (Tenn. Ct. App. Oct. 23, 2012). However, because our review of the record clearly demonstrates that the putative statutory grounds are inapplicable to Father, we are able to "reconcile the inconsistency" that exists within the trial court's written order, including its incorporated findings of fact. *See Ghorley*, 2016 WL 6651569, at *6.

The trial court determined that the evidence clearly and convincingly supported a finding of two statutory grounds to terminate Father's parental rights: (1) abandonment by willful failure to visit the Child, pursuant to Tennessee Code Annotated §§ 36-1-113(g)(1) and -102(1)(A), and (2) failure to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child pursuant to Tennessee Code Annotated § 36-1-113(g)(14). We will address each statutory ground in turn.

## A. Abandonment by Willful Failure to Visit

The trial court terminated Father's parental rights predicated on the statutory ground that he had abandoned the Child by willfully failing to visit her. Tennessee Code Annotated § 36-1-113(g)(1) provides in relevant part:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; . . .

Petitioners filed their petition on November 28, 2017. Therefore, the definition of abandonment contained within Tennessee Code Annotated § 36-1-102(1)(A)(i) (2017) applies, providing in pertinent part:[3]

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

---

[3] Effective July 1, 2018, the General Assembly has amended Tennessee Code Annotated § 36-1-102(A) to substitute the phrase, "proceeding, pleading, petition, or any amended petition," in place of "proceeding or pleading." *See* 2018 Tenn. Pub. Acts, Ch. 875, § 1 (H.B. 1856). Pursuant to the same amendment, the words, "willful" and "willfully," have been deleted wherever they previously appeared in subsection -102(1), and a new subsection, -102(1)(I), has been added, providing that the "absence of willfulness" shall be an affirmative defense to abandonment for failure to visit or support, for which "[t]he parent or guardian shall bear the burden of proof." *See id*. at § 2. Inasmuch as the instant action was filed in November 2017, we will confine our analysis in this Opinion to the version of Tennessee Code Annotated § 36-1-102 in effect at that time.

Pursuant to the applicable version of the statute, the trial court must find that a parent's failure to visit was willful. *See In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007).

Failure to visit a child is willful when a person is "aware of his or her duty to visit . . . has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id*. at 864. This Court has further explained:

> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id*. Additionally, because the termination petition was filed on November 28, 2017, the four-month determinative period would have begun on July 27, 2017, and ended on November 27, 2017 ("Determinative Period"). *See In re Joseph F*., 492 S.W.3d 690, 702 (Tenn. Ct. App. 2016) (citing *In re Jacob C.H*., No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (explaining that the applicable four-month statutory period preceding filing of the termination petition ends on the day preceding filing)).

Although Father does not dispute the fact that he failed to visit the Child during the Determinative Period, he argues that the trial court erred by finding that his failure to visit was willful for two reasons. First, Father contends that his failure to visit the Child was not willful because "he was not allowed to visit due to the blatant actions of [Petitioners]." Specifically, Father avers that even after the juvenile court suspended his visitation with the Child on July 29, 2015, Mother would still allow Father to visit the Child at Mother's discretion. Father contends that because he "was at the mercy of [Petitioners]" as to when he could visit the Child, his failure to visit was not willful. Based on our thorough review of the record, we determine Father's argument in this regard to be unavailing.

We recognize that "[a] parent cannot be said to have abandoned a child when his failure to visit . . . is due to circumstances outside his control." *In re Adoption of Angela E*., 402 S.W.3d 636, 640 (Tenn. 2013) (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). However, a parent's failure to visit is not excused by someone else's conduct unless the conduct actually prevents the parent from visiting or "amounts to a significant restraint of or interference with the parent's efforts to develop a relationship with a child." *In re Audrey S*., 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005). Although Father "was under no requirement to seek court assistance to enforce his visitation rights," "taking legal action to enforce visitation rights can preclude a finding of willfulness." *In re Braxton M*., 531

S.W.3d 708, 727 (Tenn. Ct. App. 2017) (quoting with approval *In re Gavin G.*, No. M2014-01657-COA-R3-PT, 2015 WL 3882841, at *7 (Tenn. Ct. App. June 23, 2015)).

The trial court found that Father's "choice to get up and to leave the proceedings in juvenile court" was demonstrative of his "choice . . . not to deal with the courts" moving forward. The trial court also noted that all that was required of Father by the July 29, 2015 juvenile court order was submission to a hair follicle test to facilitate the juvenile court's consideration of reinstating Father's visitation. Instead, as the trial court elucidated, Father chose to leave the proceedings of his own volition. As a result of his inaction, Father's visitation with the Child was suspended until such time as he would submit to a hair follicle test, which he never did. Moreover, in its ensuing order suspending Father's co-parenting time, the juvenile court provided Father with a second opportunity to submit to a hair follicle test during an August 26, 2015 hearing. Again, Father refused. We conclude that the evidence supports the trial court's findings in this regard.

To the extent Father's argument that he was unable to visit the Child is premised upon the effect of the juvenile court's July 29, 2015 order, our Supreme Court has held that a prior order suspending a parent's visitation does not necessarily preclude a finding that the parent willfully failed to visit the child. *See In re Adoption of Angela E.*, 402 S.W.3d at 642. In *Angela E.*, the father's visitation had been suspended by the trial court for approximately three years. *Id*. During that time, the father had filed a petition to reinstate visitation but had taken no further action to pursue the matter for two years. *Id*. The Supreme Court recognized that the parent had made no attempt to see his children until after the termination petition was filed and had provided no reasonable excuse for failing to pursue his petition. *Id*. As such, the High Court concluded that the father was not "actively trying to maintain visitation." *Id*. Consequently, the Court held that "the prior order suspending Father's visitation rights did not preclude a finding that Father willfully failed to visit the children." *Id*.

In the present case, the record contains a dearth of evidence indicating that Father had "actively tri[ed] to maintain visitation" with the Child by attempting to reinstate his visitation or by contacting her by way of telephone or other means of communication. *See id*. The trial court found that Father visited the Child on two occasions during the time period from July 29, 2015, through the petition's filing on November 28, 2017. Significantly, neither visit occurred within the Determinative Period. Because the alleged order suspending Father's visitation does not preclude a finding of willfulness and because Father has not made any cognizable efforts to reinstate his visitation with the Child, Father is not entitled to relief based on the juvenile court's order suspending his visitation.

Second, Father postulates that his failure to visit the Child was not willful because he was unaware that the juvenile court had suspended his visitation rights until more than two years after the juvenile court entered the July 29, 2015 order. This argument is also unpersuasive. Father, of his own accord, chose to leave the July 29, 2015 juvenile court

proceeding and testified during the termination trial that he did not follow up with the juvenile court as to the status of his visitation rights. Despite being afforded a second opportunity to attend a subsequent juvenile court hearing on August 26, 2015, Father failed to attend or submit to a hair follicle test.

Additionally, Father testified that he regularly visited the Child in accordance with the permanent parenting plan. However, Father acknowledged that he suddenly ceased his regular visits with the Child following the July 29, 2015 juvenile court hearing. Even assuming, *arguendo*, that Father was unaware that his visitation rights had been suspended, Father did not inquire as to the sudden disruption of his prior regular visitation with the Child. On cross-examination, when Father was questioned why he did not inquire about the status of his visitation rights with the court system or with an attorney, Father testified, "I don't know. I don't know. I don't really have an answer. . . . I should have."

Based on the foregoing analysis, we conclude that the evidence preponderates in favor of the trial court's finding by clear and convincing evidence that Father's failure to visit was willful. *See In re Audrey S.*, 215 S.W.3d at 863-64. We therefore affirm the trial court's termination of Father's parental rights based on this statutory ground.

### B. Failure to Manifest an Ability and Willingness to Assume Custody or Financial Responsibility of the Child

Father asserts that Petitioners failed to present clear and convincing evidence to support termination of his parental rights pursuant to Tennessee Code Annotated § 36-1-113(g)(14), which provides as an additional ground for termination:[4]

> A legal parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Upon our careful review of the record, we determine that the trial court did not err in finding that clear and convincing evidence existed to support this statutory ground for termination of Father's parental rights.

This Court has explained the following with regard to this ground for termination of parental rights:

---

[4] Effective July 1, 2018, Tennessee Code Annotated § 36-1-113(g)(14) has been amended to substitute the phrase, "A parent," in place of "A legal parent." *See* 2018 Tenn. Pub. Acts, Ch. 875, § 12 (H.B. 1856). Inasmuch as the instant action was filed in November 2017, this amendment is not applicable.

Essentially, this ground requires [a petitioner] to prove two elements by clear and convincing evidence. First, [a petitioner] must prove that [the parent] failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14). [A petitioner] must then prove that placing the children in [the parent's] "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]." *Id.*

* * *

We have made the following observations about what constitutes "substantial harm":

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) (footnotes omitted).

*In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7-8 (Tenn. Ct. App. Apr. 4, 2018) (additional internal citations omitted).

This Court has also previously held that the first prong of Tennessee Code Annotated § 36-1-113(g)(14) requires the petitioner to prove that a parent has failed to meet the requirement of manifesting both a willingness and an ability to assume legal and physical custody of the child or has failed to meet the requirement of manifesting both a willingness and an ability to assume financial responsibility of the child. *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *14 (Tenn. Ct. App. June 20, 2018); *but see In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018) (reversing this ground for termination when parents were unable but had demonstrated willingness to assume custody and financial responsibility of their children). Concerning the standard of proof applicable to this statutory ground for termination, this Court has recently explained:

- 12 -

Initially, there was a "split in authority" as to how the first element was proven. *See In re Colton B*., [No. M2018-01053-COA-R3-PT,] 2018 WL 5415921, at *9 [(Tenn. Ct. App. Oct. 29, 2018)]. "In *In re Ayden S*., No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018), a panel of this Court concluded that the first prong of the statute requires the petitioner to prove both an inability and an unwillingness of the parent to assume custody or financial responsibility for the child." *Id*. Because the parents at issue wanted custody, this negated a required element of the ground. *In re Ayden S*., 2018 WL 2447044, at *7.

Another panel of this Court respectfully disagreed with that approach in *In re Amynn K*., No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *14 (Tenn. Ct. App. June 20, 2018), holding, instead, that

> [T]he first prong of Tennessee Code Annotated § 36-1-113(g)(14) requires that the petitioner prove that a parent has failed to meet the requirement of manifesting both a willingness and an ability to assume legal and physical custody of the child or has failed to meet the requirement of manifesting both a willingness and an ability to assume financial responsibility of the child.

Stated differently, "the parent must have 'manifest[ed], by act or omission, an ability and willingness.'" *Id*. at *13 (quoting Tenn. Code Ann. § 36-1-113(g)(14)).

Recently, members of this panel have endorsed the latter approach adopted in *In re Amynn K*. *See, e.g., In re H.S*., No. M2019-00808-COA-R3-PT, 2020 WL 1428777, (Tenn. Ct. App. Mar. 20, 2020) ("After careful consideration of the conflicting authorities, we accept DCS's invitation to follow the holding of *In re Amynn K*."); *In re Jayda H*., No. E2019-00855-COA-R3-PT, 2019 WL 6320503, at *9 (Tenn. Ct. App. Nov. 25, 2019) ("[C]onsistent with the discussion in the *In re Amynn K*. decision, we do not view a parent's demonstration of 'willingness' as fatal to this ground when accompanied by a failure to manifest the requisite 'ability.'"); see also *In re Bentley Q*., No. E2019-00957-COA-R3-PT, 2020 WL 1181804, at *10 (Tenn. Ct. App. Mar. 11, 2020); *In re Serenity S*., No. E2019-00277-COA-R3-PT, 2020 WL 522439, at *16 (Tenn. Ct. App. Jan. 31, 2020); *but see In re Neveah M*., No. M2019-00313-COA-R3-PT, 2020 WL 1042502, at *16 (Tenn. Ct. App. Mar. 4, 2020) (following *In re Ayden S*. with one judge concurring in results only).

We also find guidance in our supreme court's decision in *In re Bernard T.*, 319 S.W.3d 586, 604 (Tenn. 2010), wherein the Court considered a similar ground for termination, applicable to putative fathers, which applies when "[t]he person has failed to manifest an ability and willingness to assume legal and physical custody of the child[.]" Tenn. Code Ann. § 36-1-113(g)(9)(A)(iv). The Court affirmed termination under this ground where the father had "manifested a commendable willingness to assume legal custody of all the children" but "conceded that he was unable to support the children financially and that he could not provide them with a stable residence." *Id.* According to the Court, "This testimony alone provide[d] clear and convincing evidence that [the father] [did] not presently have the ability to assume legal and physical custody of any of the children." *Id.* at 604-05.

\* \* \*

It is important to note that the statute does not focus on a parent's bare subjective claim of willingness. Instead, it asks whether the parent "has failed to manifest, by act or omission, . . . [a] willingness to personally assume legal and physical custody[.]" Tenn. Code Ann. § 36-1-113(g)(14). In assessing a parent's willingness, "'we look for more than mere words.'" *In re Jaxx M.*, No. E2018-01041-COA-R3-PT, 2019 WL 1753054, at \*9 (Tenn. Ct. App. Apr. 17, 2019) (quoting *In re Cynthia P.*, No. E2018-01937-COA-R3-PT, 2019 WL 1313237, at \*8 (Tenn. Ct. App. Mar. 22, 2019)). A lack of effort can undercut a claim of willingness. *Id.*; *see, e.g., In re Antonio J.*, No. M2019-00255-COA-R3-PT, 2019 WL 6312951, at \*9 (Tenn. Ct. App. Nov. 25, 2019) ("While Mother's words have indicated that she is willing to resume custody and financial responsibility for her children, her actions have betrayed her unwillingness to make the effort required for reunification."). "Parents must have demonstrated their willingness by attempting to overcome the obstacles that prevent them from assuming custody or financial responsibility for the child." *In re Jonathan M.*, [No. E2018-00484-COA-R3-PT,] 2018 WL 5310750, at \*5 [(Tenn. Ct. App. Oct. 26, 2018)].

*In re Nevaeh B.*, No. E2019-01539-COA-R3-PT, 2020 WL 1527001, at \*6-8 (Tenn. Ct. App. Mar. 31, 2020). *But see In re Isabella W.*, No. E2019-01346-COA-R3-PT, 2020 WL 2070392, at \*11 (Tenn. Ct. App. Apr. 29, 2020) (majority opinion and dissenting opinion recognizing that a split of authority exists concerning this ground but with majority opinion agreeing with the holding in *In re Ayden S.* that "if a party proves only the 'ability' criterion or the 'willingness' criterion, the requirements of the statute are not met, and this ground may not serve as a basis for terminating parental rights.") (Swiney, C.J., dissenting in part).

- 14 -

Regarding the first prong in the instant action, the trial court found that Petitioners had proven by clear and convincing evidence that Father had manifested neither the ability nor the willingness to personally assume legal or physical custody of the Child or financial responsibility for the Child. The court found that Father had "taken no independent action" to reinstate his visitation with the Child and had not taken responsibility and accountability for his choice not to do so. The court stated, "It took Mother filing the petition to terminate his parental rights for there to be any steps taken toward trying to regain visitation, trying to regain custody, or to move forward in any way best for this little girl."

In addition, the trial court found the following concerning Father's drug use:

> Testimony was offered that back in 2015 or '16, when the original juvenile court order was entered, that there were allegations of substance abuse by [Father]. Near the time of the juvenile court order, [Father] also received a DUI at that point in time. There's not been any additional charges made that were presented into evidence as it relates to any substance abuse, but Father did testify that he does continue to smoke marijuana, but the frequency of his doing so was not fleshed out fully in the proof.

Father also acknowledged in his testimony at trial that he continued to use marijuana and would fail a hair follicle test if it were to be administered at the time of his testimony.

Although the trial court found that Father had paid child support, the court expressed concern that Father had also experienced issues regarding his employment. Father testified that over the past several years he had undergone numerous transitions in his employment for various reasons. Based on its findings, the trial court concluded that "the conditions that were in existence at the time the juvenile court order was entered were still present based on [Father's] own testimony[.]" We agree and note that in addition to the trial court's findings above, the evidence demonstrated that Father still had not submitted to a hair follicle test or other drug screening after having multiple opportunities to do so, particularly during the July 29, 2015 and August 26, 2015 juvenile court hearings or at any point during the two-year span leading up to the filing of the petition in the instant action. Based on the foregoing, we agree with the trial court's determination by clear and convincing evidence that Father was not able or willing to assume physical or legal custody of or financial responsibility of the Child.

The second prong of this statutory ground requires Petitioners to prove by clear and convincing evidence that placing the Child in Father's legal and physical custody would pose a risk of substantial harm to the Child's physical and psychological welfare. *See* Tenn. Code Ann. § 36-1-113(g)(14). In addition to Father's history with alcohol and substance abuse, the trial court found that Father had not maintained any consistent contact with the Child as demonstrated by his own testimony that he had no meaningful visitation with the Child between July 29, 2015, and August 2019. By the time of trial, Father

- 15 -

acknowledged and the trial court found that he had not seen the Child in nearly four years. Furthermore, the Child had resided with Mother since birth. As a result, the trial court concluded that there would be a substantial risk of harm to the Child's welfare if Father were to assume legal and physical custody of the Child.

Upon careful review of the record, we agree with the trial court's determination that returning the Child to Father's custody would pose a risk of substantial harm to the Child's physical and psychological welfare. Accordingly, we affirm the trial court's determination by clear and convincing evidence regarding this statutory ground for termination of Father's parental rights.

## V. Best Interest of the Child

Father further contends that the trial court erred in finding by clear and convincing evidence that termination of his parental rights was in the best interest of the Child. Specifically, Father argues that because the statutory grounds for termination were purportedly not met, the trial court should not have reached the best interest analysis. Having determined that the trial court properly found the existence of statutory grounds, we disagree.

When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877; *see also In re Carrington H.*, 483 S.W.3d at 523 ("'The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination.'" (quoting *In re Angela E.*, 303 S.W.3d at 254)). Tennessee Code Annotated § 36-1-113(i) provides a list of factors the trial court is to consider when determining if termination of parental rights is in a child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *See In re Carrington H.*, 483 S.W.3d at 523; *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Furthermore, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1)     Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2)     Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)     Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)     Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

As our Supreme Court has explained regarding the best interest analysis:

"The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." In re Angela E., 303 S.W.3d at 254.

When conducting the best interests analysis, courts must consider nine statutory factors listed in Tennessee Code Annotated section 36-1-113(i).

- 17 -

These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. In re Carrington H., 483 S.W.3d at 523 (citing In re Audrey S., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." In re Kaliyah S., 455 S.W.3d [533,] 555 [(Tenn. 2015)] (citing In re Audrey S., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." Id. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." In re Audrey S., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. Id. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child . . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. In re Audrey S., 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. White v. Moody, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. See In re Audrey S., 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. In re Carrington H., 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." In re Audrey S., 182 S.W.3d at 878 (citing White v. Moody, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

In re Gabriella D., 531 S.W.3d 662, 681-82 (Tenn. 2017).

In its final order, the trial court specifically considered each of the statutory factors, made respective findings, and concluded that the factors weighed against maintaining Father's parental rights to the Child. Following our review of the evidence presented, we agree with the trial court's determination.

With regard to the first statutory factor, the trial court found that there were allegations of drug and alcohol use at the time the juvenile court entered its July 29, 2015 order, and Father admitted at trial that he continued to use marijuana. Father testified that since before the Child was born, he had used marijuana and that at the time of trial, he continued to do so. Although the trial court found that Petitioners had presented no evidence indicating that Father's home would be unfit for the Child, the court emphasized that significant time had passed since Father had engaged in meaningful visitation with the Child. As a result of its findings, the trial court determined that this factor favored termination of Father's parental rights.

Noting that the second factor was not applicable to this case, the trial court proceeded to find that since the juvenile court's July 29, 2015 order, Father had not made any efforts to regain visitation or to comply with the order. Also significant was that Father had neither seen the Child in nearly four years nor attempted to contact her. The evidence in the record demonstrated that the Child was accustomed to residing with Mother since her birth. As a result, the trial court found that these two factors weighed in favor of terminating Father's parental rights.

Concerning factor five, the trial court found "critical" the gap in time during which Father had not visited the Child. The court found that the Child deserved consistency and stability and that thrusting her into an environment with which she was unfamiliar would be inappropriate and not in her best interest. Furthermore, the trial court found that the Child had been in a safe and stable environment with Petitioners. We agree that the evidence demonstrated that the Child had never resided with Father for a significant period of time, even prior to the suspension of his co-parenting time, and that the Child had thrived while in Petitioners' care. Furthermore, Mother testified that she and the Child had been residing with Stepfather for nearly two years. Photographs presented by Petitioners evinced the Child appearing to be happily engaged with family activities and enjoying the holidays with Mother, Stepfather, and her step-siblings.

In reference to factor six, the trial court found that Father was convicted of domestic assault against Mother in 2011. The court also reiterated that Father manifested a history of alcohol and drug use. The court expressly declined to weigh the allegation of a cigarette burn on the Child's arm because the court found credible Father's testimony that the Child had accidentally come into contact with someone who was holding a cigarette. Furthermore, because no third party testified concerning other outstanding allegations against Father, the court declined to afford those any weight. Despite making findings regarding factor six, we note that the trial court did not expressly indicate whether it

considered this factor to weigh in favor of or against termination of Father's parental rights. Although Father asserts that he has prepared his home for the return of the Child and will offer a stable environment for her, we emphasize the trial court's finding that in 2011, Father was convicted of domestic assault against Mother.

The trial court found that factor seven weighed against termination of Father's parental rights because Petitioners presented no evidence indicating that Father's ability to provide for the Child would be restricted by any impairment. Although the court noted that Father continued to use marijuana, it found no evidence indicating that Father had used marijuana in the presence of the Child.

Concerning the eighth factor, the trial court assigned this factor "neutral weight" because it found insufficient testimony regarding Father's mental or emotional stability. We therefore determine that this factor does not weigh in favor of termination. Lastly, the trial court found that the ninth factor weighed against termination because Father had remitted payment for most of his child support obligation, specifically $22,000 over a period of eight years. We agree with the trial court's determination with respect to factors eight and nine and acknowledge that Father had consistently paid child support over a period of several years.

We determine that the trial court properly considered the statutory best interest factors in determining that those factors weighed against preserving Father's parental rights to the Child. Based on our thorough review in light of the statutory factors, we conclude that the evidence presented does not preponderate against the trial court's determination by clear and convincing evidence that termination of Father's parental rights was in the best interest of the Child. Having also determined that Petitioners established statutory grounds for termination, we affirm the trial court's termination of Father's parental rights.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's "affirmation" of the statutory grounds applicable to putative fathers pursuant to Tennessee Code Annotated § 36-1-113(g)(9)(A)(iii) and (v). The trial court's judgment terminating Father's parental rights to the Child is affirmed in all other respects. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below. Costs on appeal are assessed to the appellant, Joshua T.

_____
THOMAS R. FRIERSON, II, JUDGE